## T. O. LOWEN v. W. R. PATES.[1]

April 20, 1945.

No. 33,980.

[1]Reported in 18 N. W. (2d) 455.

*Frank E. McAllister,* for appellant.
*Ernest W. Erickson,* for respondent.

LORING, CHIEF JUSTICE.

This is a personal injury case. It comes here on appeal from an order denying a motion for a new trial after a directed verdict for the defendant at the end of plaintiff's case in chief.

October 25, 1942, around eight p. m., on a clear night, plaintiff was walking north on the easterly side of Dale street in St. Paul. He continued walking in the same direction on the crosswalk at the well-lighted intersection of Dale and Dayton. He looked in both directions before he started across. He reached a point within five feet of the northeastern curb of the intersection, where, he asserts, "a car hit me so suddenly that I didn't see it."

Defendant approached the scene of the accident from the north traveling south on Dale, and, after momentarily halting at the intersection in order to permit another car to pass, he turned east onto Dayton. He denies having hit plaintiff. He said, after relating his approach to the scene of the accident, "then I seen Mr. Lowen and I stopped right there when I seen this falling." Also, he said, "when I actually seen him first he was laying, he was getting up kind of on his, I think his right side." His version of the accident is that he played the part of the "Good Samaritan" and, after stopping to help plaintiff, gave him a ride home.

Plaintiff, besides testifying that "a car hit me so suddenly that I didn't see it," testified further that the only car at the scene of the accident when he was hit was defendant's; also, "The only car I saw was the car that was there when I was knocked down." Then he was assisted into defendant's car, that was "Right up against me, right behind me there." Plaintiff testified to admissions of defendant, made after the accident, to the effect that

defendant told plaintiff first that "he was looking the other way" and that "he wasn't looking where he was going when he hit me, but he said he felt he hit me and he was scared to death, he thought he had killed me outright." These admissions are affirmative proof. McManus v. Nichols-Chisholm Lbr. Co. 105 Minn. 144, 147, 117 N. W. 223, 224. Together, with the other circumstances shown by the record, they made out at least a prima facie case of negligence against defendant. It was error to direct a verdict for defendant.

■ In view of a new trial, the question should be considered as to whether the testimony of Lieutenant Stattman, a police officer, who was asked to testify from memoranda taken as a basis for a report to be made to the highway commissioner, was rightfully excluded.

Our highway traffic regulation act was rewritten in 1937 and is patterned after the Uniform Act Regulating Traffic on Highways, fifth of a series published and recommended by the U. S. Department of Agriculture, Bureau of Public Roads, as revised and approved by the fourth National Conference on Streets and Highways, held in May 1934. The requirement that the police officer investigating an accident shall file a report with the commissioner was later added by amendment, L. 1939, c. 430. This section, which now appears as Minn. St. 1941, § 169.09, subd. 8 (Mason St. 1940 Supp. § 2720-173, subd. 3), reads as follows:

"Every law enforcement officer who, in the regular course of duty, investigates a motor vehicle accident of which report must be made as required in this section, either at the time of and at the scene of the accident or thereafter by interviewing participants or witnesses, shall, within 24 hours after completing such investigation, forward a written report of such accident to the commissioner."

It was on the basis of this required report that Lieutenant Stattman of the St. Paul police department took the statements from which he was asked to testify.

The section of the present statute, § 169.09, subd. 13 (Mason St. 1941 Supp. § 2720-173, subd. 8), which was relied on below in excluding such testimony, is as follows:

"All required accident reports and supplemental reports *shall be without prejudice to the individual so reporting* and shall be for the confidential use of the department for accident prevention purposes, * * *. *No such report or contents thereof shall be used as evidence in any trial, civil or criminal, arising out of an accident, and no person in any trial or action shall be examined or testify as to such report nor as to the making thereof or the contents thereof,* * * *. Disclosing any information contained in any accident report, except as provided herein, is unlawful and a misdemeanor." (Italics supplied.)

It is the extent and purpose of this statute that plaintiff seems to question.

After the usual futile search for some evidence of legislative intent among the committee reports, the statement in 8 Wigmore, Evidence (3 ed.) § 2377, p. 766, is enlightening on this point, where the same provisions in other vehicle codes are discussed as follows:

"* * * Here the main object is to investigate conditions and causes with a view to future administrative action; hence the State can afford to abdicate the use of such reports for purposes of punishment or of private litigation, in case the facts reported reveal a legal liability or a commercial secret on the part of the person reporting."

This statement is borne out by § 169.10 (Mason St. 1940 Supp. § 2720-174), providing that the department shall tabulate and may analyze all accident reports and shall publish annually, or at more frequent intervals, statistical information based thereon as to the number and circumstances of traffic accidents.

At page 761 (Vol. 8) Wigmore states the need for this immunity:

"* * * many situations exist where the information can best

.be obtained only from the person himself whose affairs are desired to be known by the Government. An attempt to do so by mere compulsion might be tedious and ineffective."

The fact that this privilege of immunity was put into our present statute by later amendments (L. 1939, c. 430, § 3, subd. 8, and L. 1941, c. 439, § 1) is significant. No doubt, it was found difficult to get the information in the absence of immunity.

It is to be noted that this provision is apart and separate from that part of our traffic law which seeks to prevent hit-run practices by making the parties stop and give whatever aid is necessary to the injured party and in that way identify themselves. Our present statute providing for this is in § 169.09, subds. 2 and 3 (Mason St. 1940 Supp. §§ 2720-169, 2720-170). See, State v. Clark, 67 S. D. 133, 290 N. W. 237; Runyon v. State, 219 Ind. 352, 38 N. E. (2d) 235; James v. Commonwealth, 178 Va. 28, 16 S. E. (2d) 296.

To admit testimony based upon the statements or memoranda taken for the purpose of preparing or making the report given immunity by the statute would circumvent the very intent and purpose of the act. Therefore, the evidence was inadmissible.

The order denying a new trial is reversed.