CLYDE HICKOK v. HIEMAN MARGOLIS AND ANOTHER.[1]

April 18, 1946.

No. 34,131.

[1]Reported in 22 N. W. (2d) 850.

*Robert J. McDonald, William H. DeParcq,* and *Donald T. Barbeau,* for appellant.

*Sexton & Kennedy,* for respondents.

JULIUS J. OLSON, JUSTICE.

This is a personal injury action and comes here on plaintiff's appeal from an order denying his motion for new trial after a general verdict for both defendants.

Plaintiff was injured when, at or near midnight of November 19, 1944, he was struck by a car owned by defendant Margolis then being driven by his codefendant, Trana. The evidence justified the jury in finding that, just after plaintiff had crossed the north side of University avenue in St. Paul, going east, at a point where Roy street enters the avenue from the south but does not cross it, he was struck, while walking south on the east side of Roy street, by defendants' fast-moving automobile, traveling east, at a point within 20 feet of the southerly side of University avenue—all within the designated confines of the intersection. The evidence persuasively shows that immediately after the accident plaintiff was found lying some ten to 20 feet east of the east crosswalk line of Roy street, from eight to 20 feet north of the south curb line of University avenue, and four or five feet ahead of the car. Before entering the intersection, plaintiff looked both to his left and right and saw no traffic coming from either direction. University avenue at the scene of the accident is 95 feet wide, with double streetcar tracks

in the center which occupy about 15 feet of the passageway, leaving 40 feet on each side for vehicular traffic. The danger zone was in the south 40 feet of the intersection.

Immediately before the accident, Trana, accompanied by Margolis's son and a young woman, had been driving west on University avenue and had stopped at the corner of Fry and University. Deciding to reverse his direction, Trana turned around at Fry street and proceeded east on the south half of University avenue, gradually accelerating the speed of the car to 25 miles an hour as he approached Roy street, a distance of about 290 feet, where plaintiff was struck. Although visibility was normal on this well-lighted avenue, Trana claimed that he did not see plaintiff until the latter was three or four feet in front of the car; that he then applied his brakes, but struck plaintiff with his left front bumper, carrying him on the radiator to where the car stopped. The brakes and lights on the car were working well, and no suggestion is made of any defects in either.

■ First to be disposed of are plaintiff's assignments of error: (a) That the court erred in failing and refusing to instruct the jury that the driver was guilty of negligence as a matter of law; and (b), for the same reason and on the same ground, in failing to instruct that plaintiff was free from contributory negligence.

We have carefully read and considered the evidence bearing upon these assertions and have found no difficulty in reaching the conclusion that the questions whether there was fault on the part of the driver and lack of due care on plaintiff's part were clearly issues of fact. The verdict has settled both issues, and the record sustains the jury's determination.

■ We next approach that phase of the case against which plaintiff has massed his heaviest artillery. We refer to certain provisions of the highway traffic regulation act, namely, Minn. St. 1941, § 169.09, subds. 8, 13 (Mason St. 1940 Supp. § 2720-173, subd. 3, and 1941 Supp. § 2720-173, subd. 8), which provide:

"Subdivision 8. Every law enforcement officer who, in the regular course of duty, investigates a motor vehicle accident of which

report must be made as required in this section, either at the time of and at the scene of the accident or thereafter by interviewing participants or witnesses; shall, within 24 hours after completing such investigation, forward a written report of such accident to the commissioner."

"Subdivision 13. *All required accident reports and supplemental reports shall be without prejudice to the individual so reporting and shall be for the confidential use of the department for accident prevention purposes, * * *. No such report or contents thereof shall be used as evidence in any trial, civil or criminal, arising out of an accident, and no person in any trial or action shall be examined or testify as to such report nor as to the making thereof or the contents thereof, * * *. Disclosing any information contained in any accident report, except as provided herein, is unlawful and a misdemeanor."* (Italics supplied.)

Officers Gillson and Schultz heard the report of the accident over their squad car radio and immediately drove to the place of the accident. At the outset of the trial, plaintiff called officer Gillson, who, after a few preliminary questions put to him by counsel, was asked by Mr. Sexton, for defendants:

"Q. Officer, did you go there in response to a call in the line of your official duties?

"A. Yes, sir.

"Q. Did you go there to seek out and record information that would be used by you in making a report of this accident under the law?

"A. Yes, sir."

Mr. Sexton then informed the court that he deemed it appropriate "to object to this [line of questioning] on the ground that it is not admissible" under the quoted sections. A brief discussion followed between the court and counsel. The subject matter under discussion was our decision in Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, concerning which Mr. DeParcq, speaking for plaintiff, said:

"\* \* \* I read the opinion too, and *if counsel is going to object I would rather not take a chance on it.* I don't know exactly what that opinion means." (Italics supplied.)

The examination then proceeded:

"Q. Officer, at the time you were investigating this case did you make notes and memoranda or did your partner?

"A. Yes, I did.

"Q. And you used this for the purpose of making up your regular report?

"A. That is right.

"Q. You have refreshed your recollection, have you, by means of examining either the notes or the report?

"A. I looked at the notes.

"Q. Today?

"A. No, several days ago.

"Q. When you were advised you were to testify?

"A. Yes.

"Q. And you refreshed your recollection by the use of those notes?

"A. Yes, sir."

This was the situation when the court, on defendants' objection, made its ruling sustaining it.

We have already considered the facts here shown with those involved, considered, and determined in Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, *supra,* and can find no substantial difference in principle or substance between them. As a matter of fact, what plaintiff really wants us to do is to nullify that decision, by overruling it, or at least so to interpret the statutory language as to make that decision no longer of controlling force. The trial judge, in sustaining defendants' objection, remarked:

"\* \* \* I hope, if this case goes to the Supreme Court, they reverse me, to straighten the matter out, \* \* \*."

In the former case, we carefully considered the words and context of these sections; we painstakingly investigated the subject

matter thereof, including the purpose of the legislation as well as the effect of a contrary interpretation. All these matters were carefully studied and weighed. Plaintiff's contentions have been reëxamined with care. His brief and arguments are persuasive, but not compelling. After all, the statutory language is plain and free from ambiguity. In such situation, there is no room for construction, since "Construction lies wholly in the domain of ambiguity." 6 Dunnell, Dig. & Supp. § 8938, and cases under notes 1 and 2. Nor should we by "artificial reasoning * * * create a synthetic ambiguity," since "the purpose of construction is to remove ambiguity and not to make it." Naeseth v. Village of Hibbing, 185 Minn. 526, 529, 242 N. W. 6, 7. Courts have nothing to do with the wisdom or expediency of statutes. The remedy for unwise or inexpedient legislation is political and not judicial. 6 Dunnell, Dig. § 8944, and cases under note 29. In Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, supra, the question there considered and determined was that the testimony of a police officer who was asked to testify from memoranda taken as a basis for a report to be made to the highway commissioner was properly excluded. As already noted, we reached that conclusion for reasons which we deemed adequate. Our opinion closed with this significant language (219 Minn. 570, 18 N. W. [2d] 457):

"To admit testimony based upon the statements or memoranda taken for the purpose of preparing or making the report given immunity by the statute would circumvent the very intent and purpose of the act. Therefore, the evidence was inadmissible."

Order affirmed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.