JESSIE BERGER v. WESTERN UNION TELEGRAPH COMPANY AND ANOTHER.[1]

February 16, 1951.

No. 35,326.

[1]Reported in 46 N. W. (2d) 471.

*Coursolle, Preus & Maag,* for appellants.

*Fowler, Youngquist, Furber, Taney & Johnson,* by *E. A. Danforth,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order denying a motion for a new trial.

Bloomington avenue, which runs in a north-south direction, intersects Lake street, which runs east and west. Double sets of streetcar tracks run along both streets. The intersection is protected by traffic lights on all corners.

On August 17, 1948, at one o'clock in the afternoon, plaintiff, while walking across Lake street from the northwest to the southwest corner of the intersection, was struck by a Chevrolet truck owned by defendant Western Union Telegraph Company and then being driven by defendant Gerald C. Moen while in the course of his employment.

Prior to the accident, plaintiff had crossed Bloomington avenue from the northeast to the northwest corner of the intersection. She waited for the traffic signals to turn and then proceeded to cross Lake street, walking in a southerly direction. Defendant Moen had approached the intersection from the south. He slowed up to permit a car coming from the north to pass him, then made a sharp turn to the left, and proceeded in a westerly direction along Lake street. His testimony was that he was going about six to eight miles per hour and that he saw no one in his path. He struck plaintiff when she was about on the north streetcar

tracks, which was some distance out into the street. His testimony was that he did not see her until the moment of impact, and that he then stopped his truck instantly without moving an inch. He stated that she was eight or ten feet west of the marked crosswalk when hit.

Plaintiff testified that before proceeding to cross the street she looked both ways, that she saw nothing coming, and that when she was about on the streetcar tracks she saw defendants' truck coming toward her about seven or eight feet away. She tried to get out of the way, but did not have time to do so. She said that she was about in the center of the crosswalk.

Plaintiff suffered a fracture of the tuberosity of the left humerus, which is the upper end of the arm bone close to the shoulder, and other injuries, including multiple contusions and abrasions. The court directed the jury to return a verdict in plaintiff's favor on the question of liability, leaving for the jury only a determination of the amount of damages. The jury returned a verdict in plaintiff's favor of $12,500.

It is the contention of defendants that the court erred in directing a verdict on the issue of liability and that the verdict is so excessive that it appears to be based on passion and prejudice.

Principally, it is the contention of defendants that the evidence is conflicting as to whether plaintiff was within or west of the crosswalk at the time she was hit and that if she was west of the crosswalk it was her duty to yield the right of way to Moen under M. S. A. 169.21, subd. 3.

■ The record is quite barren of anything to show the width of the crosswalk. It does appear that the crosswalk lines were faintly visible. Plaintiff herself testified that she was within the crosswalk. She called two police officers who appeared at the scene of the accident shortly after it happened. Officer Barney P. Everson testified that Moen pointed out the location of the impact and that it was 16 or 17 feet west of the Bloomington avenue curb line. Officer Howard Gray testified that he measured the distance from the curb line to the point of impact as pointed

out to him by Moen and that it was 16 feet. He then testified with respect to the crosswalk as follows:

"Q. Will you point out where the accident occurred, did you observe where with reference to the pedestrian crosswalk?

"A. It was in the crosswalk."

Kenneth Blake, a motorman on a streetcar standing on Lake street facing east, who was an eyewitness to the accident, testified:

"Q. Where was she with reference to the crosswalk?

"A. She was in the crosswalk."

Defendant Moen stated that plaintiff was eight feet west of the crosswalk. He called as his witness Benjamin F. Brandon, who appeared shortly after the accident. Brandon testified that when he appeared plaintiff was on the ground about 10 or 12 feet west of the crosswalk. On cross-examination, plaintiff introduced a statement signed by Brandon prior to the trial, which statement was admitted without objection. Prior to its admission, Brandon stated that it was given voluntarily and that the statements in it were true. In this statement he said that he saw the truck stop; that the front end of the truck was 12 to 15 feet west of the Bloomington avenue curb line; and that when he appeared at the scene of the accident plaintiff was lying in front of the truck. Taking the testimony of Officer Gray, which is the only testimony that might indicate the distance between the west line of the crosswalk and the west curb line of Bloomington avenue, it must appear that the west crosswalk line was at least 16 feet west of the Bloomington avenue curb line. That would place the front end of the truck, according to the testimony of Brandon, within the crosswalk when it stopped; and, even if we can assume that the truck stopped without moving after the impact, which hardly seems possible, plaintiff would still be within the crosswalk when hit. As against all this testimony, we have the testimony of Moen alone. His testimony is far from

convincing. He did not see plaintiff until he struck her. His testimony is that the point of impact was eight feet west of the crosswalk. His witness Brandon, in the statement given prior to the trial, said that the front end of the truck was 12 to 15 feet west of the curb line of Bloomington avenue. As has been stated, Officer Gray measured the distance and found that the point of impact was 16 feet west of the curb line and that it was within the crosswalk. It must therefore follow that the front end of the truck, as Brandon saw it, was also within the crosswalk. It is true that he stated that plaintiff was 10 or 12 feet west of the crosswalk when he saw her, but he did not see her until after the accident. It is reasonable to suppose that she moved some distance west after being hit. It is also significant to note that there is no testimony of any kind to contradict that of plaintiff that she was within the crosswalk when she first saw the truck. It may be that in an effort to escape the peril confronting her she moved slightly to the west, but if she did that would not result in a forfeiture of her right of way. Neither are we impressed with the testimony of Moen that he was able to stop the truck instantly upon impact without moving an inch. Having in mind normal reaction time, braking time, and stopping time, it is hardly possible that he could stop instantly upon impact, not knowing that there was anything in front of him until that time.

What has been said about defendants' negligence is equally applicable to plaintiff's contributory negligence. We find no evidence which would warrant submission of plaintiff's contributory negligence to the jury. Under these circumstances, the court properly directed a verdict on the issue of defendants' liability.

■ Defendants next contend that the verdict is so excessive that it must have been based on passion and prejudice. Plaintiff was a woman in good health, 52 years of age. Prior to the accident, she had been employed six and one-half years as a cashier in a "super" market, earning about $44 per week. She suffered a fracture of the tuberosity of the humerus, which is the upper end of the arm bone just below the shoulder where the muscle and ligaments attach to

the bone. She suffered other multiple contusions and abrasions on various parts of her body. At the time of the trial she still suffered pain in her left shoulder. She was hospitalized for about a week and received daily physical therapy treatments for a month thereafter. She has a permanent disability in the motion of her left arm of 20 percent limitation in abduction. She is unable to do the work she formerly did, which is the only type of work for which she is trained. She lost seven weeks' wages from August 17 to October 4, 1948. She worked part time from October 4 to June of the following year, when she was laid off because she could not keep up with her work. It is necessary, in order to perform the work in which she was engaged, to use her left arm. Since June 1949 she has not been able to work. Her special damages, including doctor and hospital bills and miscellaneous expenses, amounted to $351.75. The jury could find that she had lost $2,902.38 on account of loss of wages up to the time of the trial. Her earning capacity in the future probably will be less than it had been prior to the accident. While the verdict is liberal, we cannot say that it is so excessive that it should be set aside. There is nothing in the record which would indicate anything that might be inclined to arouse passion and prejudice. Under these circumstances, we cannot say that the verdict is so excessive that it would require a new trial.

■ Defendants contend also that it was error to refuse to permit the witness Brandon to explain a discrepancy between his testimony and the written statement given to plaintiff's counsel prior to the time of the trial. We fail to see any such discrepancy. Brandon testified that he found plaintiff 10 to 12 feet west of the crosswalk after the accident. He did not see her prior to the accident and had no knowledge of where she was at the time she was struck. The written statement contains the following:

"'* * * After the truck stopped the front end was about 12-15 feet west of the West Bloomington curb line and approximately

on the northerly Lake Street streetcar tracks. The woman was laying in front of the truck."

It does not state how far in front of the truck she was lying. He was not asked anything about the truck while on the witness stand. Whether plaintiff was pushed after being struck or whether she fell in the direction from which the force came is something Brandon could not know. He said that the written statement was true when given and that it was true at the time of the trial. Under these circumstances, there was nothing for him to explain. We see no error on the part of the trial court in refusing to permit the witness to offer such explanation.

Affirmed.