JANIS JEAN LOVEL, BY HER FATHER AND NATURAL GUARDIAN, RAYMOND R. LOVEL, v. SQUIRT BOTTLING COMPANY OF WACONIA, INC., AND ANOTHER. RAYMOND R. LOVEL v. SAME.[1]

June 8, 1951.

Nos. 35,479, 35,480.

---

[1]Reported in 48 N. W. (2d) 525.

*L. E. Melrin* and *Leslie C. Scholle,* for appellants.

*Moonan, Heinen & Lindmeyer* and *John M. Fitzgerald,* for respondents.

LORING, CHIEF JUSTICE.

Action by Janis Jean Lovel, a minor, by Raymond R. Lovel, her father and natural guardian, for personal injuries sustained by her on September 25, 1948, about 4 p. m., at which time she was run into by a truck owned by defendant Squirt Bottling Company of Waconia, a corporation, and operated at the time by defendant

M. Stanley Aldridge, who was secretary and treasurer of the corporation. Janis was 15 months of age at the time. An action was also instituted by Raymond R. Lovel in his individual capacity to recover medical expenses incurred as the result of the accident.

The actions were tried together, and at the conclusion of plaintiffs' testimony the court granted defendants' motion for directed verdicts in both cases. This is an appeal from subsequent orders denying plaintiffs' motions for a new trial.

The accident occurred on property belonging to Raymond R. Lovel situated on the southwest corner of the intersection of trunk highway No. 5, running east and west, and state aid road No. 10, running north and south, a few miles southwest of Waconia in Carver county. The weather was fair and visibility good at the time of the accident.

In the northwest part of the building on said premises, Raymond R. Lovel maintains his living quarters. On the northeast corner thereof, he operates a general store and soft-drink and beer tavern. The remainder of the building is used for other purposes. There is an entrance to the basement on the north side near the northwest corner of the building. A ramp, 16 feet in width, extends through this entrance from the basement for a distance of 14 feet to the south edge of the driveway leading to highway No. 5. It is used for beer and soft-drink deliveries and for other purposes. There is a small yard 18.3 x 30 feet on the west side of the building between the store and an adjacent warehouse, in which Janis and her brother, aged 5 years, were accustomed to play. It is enclosed with a picket fence and has a gate on the west side. Northwest of the enclosed yard is an unenclosed grass plot, approximately triangular in shape, which extends to the south edge of the driveway which connects with highway No. 5. The children at times played here also. The accident occurred in this triangular space at a point about 20 to 23 feet west of the ramp and approximately two feet south of the driveway leading to highway No. 5.

For some years, defendant Aldridge had made soft-drink deliveries to Lovel's store each Tuesday. He knew the Lovels had a

five-year-old son and a daughter and on previous occasions had seen the boy playing in the driveway and around the truck. On the day of the accident, he was driving a Chevrolet two-ton truck belonging to defendant corporation, which he had stopped facing west in the driveway adjacent to the ramp. He testified that he had given the Lovel boy a ride on a pushcart with which he delivered merchandise and which was ordinarily fastened to the radiator or front of the truck when not in use; that after making his deliveries he returned to his truck and noticed the boy standing on the pushcart; that he then hung it on the truck, walked around to the opposite side thereof to close the doors and returned to the store to make his collections; that about 10 minutes later he returned to the truck and at that time saw the boy standing toward its rear and on its left side at least 10 feet away; and that thereupon, without again walking around the truck, he got into it from the left side, started the motor, placed it in super-low gear, and moved it ahead about a foot, when the motor died; that he then went to the front of the truck, where he saw Janis lying on the edge of the grass by the left front wheel; and that he then ran back and got into the truck, started the motor, and backed away about three feet.

Mrs. Viola M. Lovel, mother of the injured child, testified that a few days after the accident Aldridge told her that—

"Butchie [her son] took her [Janis] out because he wanted a ride on the pushcart and that Janis and Butch and Eileen [a visiting child] were in the basement running up and down the ramp when he [Aldridge] was delivering pop and were around the truck and that he gave Butch a ride on the pushcart and when he gave Butch a ride on the pushcart Janis and Eileen were down in the basement and when he rolled it up they were around the truck" and that "after he had hung up the pushcart that Janis was in front of the truck playing on the little wheels on the pushcart" and that later, after making his collections, "he started the motor and * * * went forward and * * * knew something was underneath the wheel, he didn't know what it was, he thought it was a rock, so,

* * * he didn't go out to investigate and he started the motor again and he wouldn't of known what it was underneath the wheel if he hadn't heard me call for Janis."

Walter Jaekel, a customer of Lovel's, testified that shortly before the accident he had seen Janis and her brother playing at the wheels of the pushcart as it hung on the front of the truck.

Prior to the commencement of these actions, one of plaintiffs' attorneys interviewed defendant Aldridge in the presence of a court reporter who transcribed the questions asked him and his answers thereto. At the trial plaintiffs offered the transcript in evidence, but the offer was rejected. Therein were set forth statements by Aldridge that he had seen the Lovel boy playing about the gas pumps and in front of the truck shortly prior to the accident; that on previous occasions he had seen Janis about the "house, in the kitchen"; that he would be able to see a child her size if she were two feet or more in front of the truck; and that he did not sound his horn before starting the truck.

In directing a verdict in favor of defendants, the trial court stated:

"* * * Mrs. Lovel testified, and there is no dispute about it, that Raymond Lovel, her son, sometimes called Butch, let Janis out of the gate through the play yard, which fact at the time was unknown to the defendants in this case and which fact obviously permitted Janis Lovel, fifteen months old child, to get in the obscure position in front of the truck unknown to plaintiff or the defendants * * *. It is undisputed in this case that at the time of the accident Janis Lovel must have been in an obscure position in front of the truck and that the truck did not move more than approximately a foot at the time of the accident.

\* \* \* \* \*

"* * * In this case the evidence conclusively establishes that the position of Janis Lovel prior to the happening of this accident in front of the truck was such that the driver of the vehicle could not see her. The only evidence in the case establishing her position

was that of the testimony of the witness Jaekel, that the fifteen month old child was standing directly in front of the truck next to the dolly attached in front of the truck turning the wheel of the dolly and in a position where it conclusively appears from the evidence in this case, as a matter of law, defendant Aldridge, driver of the vehicle, could not possibly have seen her from his position behind the steering wheel in his truck and, therefore, could not have possibly had any notice of the presence of this young child directly in front and next to the front end of his truck.  *  *  *  plaintiffs have offered certain testimony of purported admissions on the part of defendant which they claim creates a fact issue for the jury.  Under ordinary circumstances admissions by a party are for the jury's consideration along with the other evidence in the case except admissions can not overcome clear proof that a fact is otherwise than [as] admitted."

Lovel and his wife testified as to certain statements made to them by defendant Aldridge subsequent to the accident to the effect that he was aware that Janis had been playing around the truck and with the wheels of the pushcart attached thereto shortly prior to the accident.  In his direct testimony, Aldridge denied that he had seen Janis near the truck prior to the accident.  With reference to Aldridge's admissions to the Lovels, as above related, the trial court, in directing a verdict for defendants, stated that, since the actual facts were not in dispute and established, as a matter of law, that defendants were not guilty of negligence, such admissions did not overcome the clear proof of facts in conflict therewith, and hence were insufficient to create a jury question on the issue of defendants' negligence.

Plaintiffs assert here that (1) there was sufficient evidence of defendants' negligence to create a fact issue for the jury; (2) the court erred in rejecting evidence that defendant Aldridge had failed to sound his horn or give any signal before starting his truck; and (3) the court erred in rejecting the transcript of testimony of defendant Aldridge made to plaintiffs' counsel.

■ It is obvious that if defendant Aldridge was aware of the presence of Janis around the truck shortly prior to the accident, a duty rested upon him to exercise increased caution commensurate with the increased hazard, and that failure to do so would properly sustain a finding of negligence.

It is well settled that where children are known or may reasonably be expected to be in the vicinity of a parked automobile or truck a degree of vigilance commensurate with the greater hazard thereby created is required of the driver of the automobile or truck to measure up to the standard which the law regards as ordinary care. See, Audette v. Lindahl, 231 Minn. 239, 42 N. W. (2d) 717; McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1; Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665. Whether such a driver has measured up to this standard is, of course, a fact question for the jury. Schroeder v. Streed, 231 Minn. 267, 42 N. W. (2d) 816; Marcum v. Clover Leaf Creamery Co. 225 Minn. 139, 30 N. W. (2d) 24; Otterness v. Hathaway, 204 Minn. 88, 282 N. W. 687. Here, if the jury chose to believe that Aldridge was aware of the presence of Janis at the time he was making his deliveries, then such knowledge on his part would support a finding that his failure to walk to the front of the truck to ascertain whether she was still there as he prepared to leave constituted negligence.

■ We are of the opinion that the testimony of plaintiff and his wife as to statements of defendant Aldridge indicating his knowledge of Janis's presence near his truck shortly prior to the accident were admissible and created a fact issue for the jury. On this question, Jaekel's testimony that he observed the children, including Janis, playing in the near vicinity of the truck while Aldridge was making his deliveries formed an added basis for its materiality and relevancy. Although an admission by a party is not conclusive (Thorkeldson v. Nicholson, 145 Minn. 491, 175 N. W. 1008; McManus v. Nichols-Chisholm Lbr. Co. 105 Minn. 144, 117 N. W. 223), we have frequently held that it may constitute credible evidence. Williams v. Jayne, 210 Minn. 594, 299 N. W.

853; Linderoth v. Kieffer, 162 Minn. 440, 203 N. W. 415; see, Blume v. C. M. & St. P. Ry. Co. 133 Minn. 348, 158 N. W. 418, Ann. Cas. 1918D, 297. This is particularly true when the facts to which it relates are within the personal knowledge of the party claimed to have made the admission. Liefson v. Henning, 210 Minn. 311, 298 N. W. 41. Thus, in Litman v. Peper, 214 Minn. 127, 129, 7 N. W. (2d) 334, 335, we stated:

"It is the contention of defendants that admissions, standing alone, are not sufficient evidence on which liability for negligence can be based. But an admission may be made in such language and under such circumstances as to make it the most satisfactory kind of proof. * * * An admission of fact is affirmative evidence. Its weight with the jury depends on the circumstances under which it is made and the character of the admission."

See, also, Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455; Linderoth v. Kieffer and Blume v. C. M. & St. P. Ry. Co. *supra*.

Based upon the foregoing, we hold that the testimony of plaintiff and his wife as to the admissions made by defendant Aldridge were admissible as admissions and created a jury question with reference to defendants' negligence.

■ The cases of O'Neil v. Cochrane, 184 Minn. 354, 238 N. W. 632, and Williams v. Cohn, 201 Iowa 1121, 206 N. W. 823, relied upon by defendants and forming the basis of the trial court's action in directing a verdict in favor of defendants, are not controlling. In each of the cited cases, the court noted that the truck driver had not seen the injured child in the vicinity prior to the accident, and hence was not under obligation to exercise a higher degree of care commensurate with such knowledge. In each case, the evidence disclosed that the driver had discharged his applicable duty of exercising ordinary care. In the present case, as indicated above, if the jury determined that Aldridge knew of the presence of Janis near his truck shortly prior to the accident, it might well determine that he had failed to discharge the increased obligations of care imposed upon him as a result of such knowledge.

■ Plaintiffs assert that the trial court erred in rejecting evidence of the failure of defendant Aldridge to sound his horn prior to his departure. We believe that such evidence was admissible. Should the jury have found that he was aware of Janis's presence, his failure to sound his horn might well be regarded as an element in establishing his failure to discharge the increased obligations of care resting upon him as he left the premises.

■ Plaintiffs claim error in the trial court's refusal to receive the court reporter's notes with reference to certain questions propounded to Aldridge and his answers thereto shortly after the accident. Such questions and answers were not part of any formal court procedure, but were the result of an interview between Leslie C. Scholle, attorney for plaintiffs, and Aldridge, at which a court reporter was present to take notes, which were later transcribed. The rule governing such a situation is expressed in Cooper v. Hoeglund, 221 Minn. 446, 453, 22 N. W. (2d) 450, 455, as follows:

"* * * the reporter was permitted to read answers to specific questions denied by the witness. This was the proper manner of impeaching and contradicting the witness. Stenographic notes of a statement by a party or witness do not constitute a written instrument made by him, but only a memorandum of what he said made by a third party; they have no evidentiary value as such, but are simply a memorandum to refresh the recollection of the stenographer as a witness where he has no independent recollection of the statement."

We conclude therefrom that, while the trial court might properly refuse to receive this transcript in evidence as an exhibit, nevertheless the court reporter should have been permitted to refresh his memory therefrom and to testify as to matters therein which constituted admissions of defendant Aldridge in conflict with his testimony at the trial. Extrajudicial oral admissions made by a party to the action and adverse to him are admissible both for impeachment purposes and as direct substantive evidence of the facts to

which they relate. Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, *supra* (written admission); Litman v. Peper, 214 Minn. 127, 7 N. W. (2d) 334, *supra;* Schmitt v. Emery, 211 Minn. 547, 2 N. W. (2d) 413, 139 A. L. R. 1242; Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451; Williams v. Jayne, 210 Minn. 594, 299 N. W. 853, *supra;* Quickstad v. Tavenner, 196 Minn. 125, 264 N. W. 436; Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649; Thorkeldson v. Nicholson, 145 Minn. 491, 175 N. W. 1008, *supra;* McManus v. Nichols-Chisholm Lbr. Co. 105 Minn. 144, 117 N. W. 223, *supra;* 2 Jones, Evidence (2 ed.) § 898. Nor is it necessary to lay a foundation for such prior statements by first calling the witness's attention to his prior inconsistent statements when the witness is a party to the action. Johnson v. Farrell, 210 Minn. 351, 298 N. W. 256; Howard v. Illinois Cent. R. Co. 116 Minn. 256, 133 N. W. 557; Heydman v. Red Wing Brick Co. 112 Minn. 158, 127 N. W. 561.

Reversed and new trial granted.