GLADYS M. THOMAS v. IRA MUELLER AND ANOTHER.

88 N. W. (2d) 842.

February 28, 1958—No. 37,208.

*Harry H. Peterson,* for appellant.
*Charles R. Coulter* and *Iverson, Coulter & Nelson,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying the motion of the plaintiff for a new trial on the issue of damages only or in the alternative on all the issues.

On the evening of April 14, 1954, a collision occurred between plaintiff, Gladys M. Thomas, and an automobile owned by defendant Ira Mueller and driven with his consent and permission by his then 19-year-old son, defendant Donald Mueller. The accident occurred at the intersection of Seymour Street Southeast and Franklin Avenue, Minneapolis.

Plaintiff testified that she left the house of a friend, Miss Mellem, to return to her own home sometime between 8:30 and 9 on the evening of the accident. It was drizzling or raining at the time. When she left the porch of the Mellem home, which is located at the southeast corner of the intersection, she walked about 20 feet on a walk to the sidewalk, and she then went to the intersection crosswalk on the corner closest to the Mellem home. She said that she observed the automatic stop-and-go traffic-control signals at the intersection and that they were "red" for traffic going east and west on Franklin Avenue and "green" for traffic or pedestrians crossing Franklin on Seymour. She then proceeded north across Franklin. She first saw defendant's car coming west on Franklin when it was about a block away and again when she got halfway across Franklin, at which time she said it had come to a momentary stop 4 to 6 feet back from the crosswalk. She testified "because he stopped that far back I thought he saw me and proceeded across * * * then I saw the car start up very sharply and I was hit."

When called as an adverse witness under the rules, defendant Donald testified that he was driving west on Franklin on the evening in question at the rate of 28 to 30 miles per hour; that he was familiar with the intersection of Franklin and Seymour and knew that there was a stop-and-go sign there; that he was about a block and a half from the

intersection when he first saw the stop-and-go sign and at that time the color of the signal light for traffic proceeding on Franklin was red. He said that he then slowed down and first observed plaintiff when she was in front of his car as he hit her. He claimed that the point of impact was on the left front fender of his car and that it took place on the "east side of the farthest line of the pedestrian walk." On direct examination the witness said that he was going about 10 miles an hour when he got to within a few feet of the intersection but that he did not bring his car to a stop. He testified that he was driving about 1 foot north of the center line of Franklin Avenue as he approached the intersection; that the light was red and he slowed down; and that when he was about 6 feet in front of the pedestrian crosswalk he "shifted into second and the light turned to green and all at this time the thing happened, it happened pretty fast." As he shifted the gears he said "the lady come out and I seen her and I hit my brakes right away." Defendant said that after the impact he brought his car to an immediate stop in the pedestrian crosswalk and that plaintiff "was at the left front fender, sort of sitting down in front of it there."

While the plaintiff testified that she started across Franklin when the signal light was green for pedestrians crossing Franklin, there is a conflict in the testimony in this respect. For example, while plaintiff's witness, Miss Mellem, did not recall at the trial that plaintiff told her immediately after the accident that the light on the corner had been green when she started to cross Franklin but that it had changed to red, she agreed on cross-examination with the contents of a statement she had signed to that effect.

In this connection defendant Donald also testified that after the accident he visited Miss Mellem's house where plaintiff was sitting on a davenport explaining what had happened and that at that time she made the statement to her friend that she was running while the light was green and that it had changed to red. There was also testimony to the effect that before plaintiff left the Mellem home that evening she had no raincoat, that she was wearing a dark suit and did not wait for an umbrella that Miss Mellem attempted to get for her.

The jury returned a verdict for the defendants and upon appeal the plaintiff assigned numerous errors. The pertinent ones which we will

consider are that the trial court erred: (1) In denying her motion for a directed verdict on the question of liability thus leaving only the question of damages for the jury; (2) in submitting the questions of defendant's negligence and plaintiff's contributory negligence to the jury; (3) in failing to instruct specifically as to the effect of M. S. A. 169.06, subd. 5(c)(1), as requested by plaintiff; and (4) in failing to instruct the jury relative to defendant's duty to keep and maintain a proper lookout as he approached the intersection.

Plaintiff argues that the failure of the defendant driver to yield the right-of-way to her or to see her crossing the intersection and to stop before entering the intersection established his negligence as a matter of law. She contends that an operator of an automobile is guilty of negligence when he collides with a pedestrian who has started to cross with the green light and thus has the right-of-way, citing Nygren v. Minneapolis St. Ry. Co. 241 Minn. 485, 63 N.W. (2d) 560. The fact situation in the Nygren case is different from the case at bar. There the plaintiff alighted from the front door of a bus when it was standing still, and it was standing still when she proceeded to walk in front of it. We held there that the owner or operator of a motor vehicle is not entitled to the statutory right-of-way where the vehicle was standing still on the street when a discharged passenger had already commenced to walk in front of it.

Violation of pedestrian right-of-way statute is only prima facie evidence of negligence. If there is evidence tending to show a reasonable explanation for failure to yield the right-of-way to the pedestrian, the question of the negligence of the defendant driver is for the jury. Becklund v. Daniels, 230 Minn. 442, 42 N.W. (2d) 8. In view of the fact that there was evidence here that it was raining or drizzling; that the plaintiff might have been running as she crossed the intersection; that while the light was green it changed to red as she started to cross; that she was wearing dark clothes, and because of other surrounding circumstances, the trial court properly submitted the question of the negligence of the defendant driver to the jury.

Plaintiff insists, however, that when a pedestrian starts across the intersection with the "Go" light she has the right-of-way until she reaches the curb on the other side. While there may be sound logic

and legal reasoning for such a rule, we have held that a pedestrian must exercise ordinary care for his own safety even though he is on the crosswalk and has the right-of-way. Swanson v. Carlson, 231 Minn. 373, 43 N.W. (2d) 217; Becklund v. Daniels, 230 Minn. 442, 42 N.W. (2d) 8; Bolster v. Cooper, 188 Minn. 364, 247 N. W. 250; Murray v. Jacobson, 195 Minn. 153, 262 N.W. 152. In Swanson v. Carlson, *supra,* the court also said that while a pedestrian has a right to assume that the driver of an automobile will respect his right-of-way at an intersection this cannot be turned into a rule which relieves a person from exercising ordinary or reasonable care for his own safety. See, also, Becklund v. Daniels, *supra,* and cases cited.

In Hickok v. Margolis, 221 Minn. 480, 22 N.W. (2d) 850, an action for personal injuries sustained by plaintiff when struck by an automobile while lawfully crossing a street within the designated confines of an intersection, it was held, under the evidence, that defendants' negligence and plaintiff's contributory negligence were fact issues for a jury's determination, and that verdict for defendants was supported by the evidence.

With reference to assignments of error (1) and (2) above referred to we find no reversible error in connection with the court's rulings and instruction. Viewing the evidence in the light most favorable to the prevailing parties, as we must do, the court acted within its discretion in denying plaintiff's motion for a directed verdict on the question of liability which would then leave only the question of damages for the jury. Likewise under the record here the issues of defendant's negligence and plaintiff's contributory negligence were fact questions for the jury.

■ Plaintiff contends that the trial court erred in failing to grant her request to instruct the jury specifically as to the effects of § 169.06, subd. 5(c)(1), which provides:

"Vehicular traffic facing the signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until green or 'Go' is shown alone;"

She also argues that the rights of the parties really depended upon the

explanation of the above section and § 169.06, subd. 5 (a)(1). While it is true that the court did not read § 169. 06, subd. 5(c)(1), it did read to the jury the following part of § 169.06, subd. 5(a)(1):

"* * * vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time that signal is exhibited."

A careful examination of the court's charge in its entirety satisfies us that a jury should reasonably know from its wording that the driver of such a vehicle facing the signal shall stop before entering the nearest crosswalk at the intersection, or at some other point indicated by a clearly visible line, and remain stopped until the "Go" sign comes on and that such traffic shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection when the "Go" signal comes on.

The court explained with reference to stop-and-go signs that, when a green light comes on, one has a right to "Go" and keep on going but in doing so he has a duty to exercise reasonable care. It also explained that when a driver sees a green light he has to exercise reasonable care that he does not injure other people who are rightfully in a particular place. With more specific reference to the legal duties of the defendant driver, the court explained to the jury that as he came along Franklin Avenue he came to an intersection with Seymour Street; that there was a crosswalk there, and that people were liable to be on the crosswalk,

"* * * so you watch out for that to see if they are there, and if they are there, you have got to use reasonable care to see that you don't injure them, and not only that, but if the person starts with the green light and starts going across and it changes afterwards so that the Franklin Avenue man has the green light, he is supposed to yield the right-of-way to the person who was on that crosswalk going across to the other side."

The court then read the above-referred-to portion of § 169.06, subd. 5(a)(1), and explained that —

"* * * if you violate that particular statute, as indeed most of the

highway statutes, it is what they call 'prima facie evidence of negligence.' It means that that standing alone and unexplained would be sufficient to make a finding of negligence, unless there are other circumstances which would justify or excuse the fact that there was not a compliance with the law, if you find that to be such, * * *."

The court then went into further detail with reference to the use of reasonable care by all parties —

"* * * to see that one does not injure other people and to see that the other person is not injured by or through her own negligence, * * * you search the evidence, you find out when Mr. Mueller was coming along and that this lady was in the crosswalk, if you so find from the evidence, you find out whether there were circumstances that would justify or excuse him from not seeing her that particular night at that particular time * * *. On the other hand, you examine the conduct of the plaintiff and find 'Did she do something that an ordinary prudent person would not have done,' and did that in some way contribute to the happening of the accident?"

While we are not recommending the particular language of that part of the charge as a model for future use, we must conclude that it sufficiently explained the situation so as to apprise the jury with reference to the laws involved. We have repeatedly held that the charge of the court must be viewed in its entirety and from a common-sense point of view, Cameron v. Evans, 241 Minn. 200, 62 N.W. (2d) 793; Gillson v. Osborne, 220 Minn. 122, 19 N. W. (2d) 1; Zuber v. N. P. Ry. Co. 246 Minn. 157, 74 N.W. (2d) 641; and that a new trial will not be granted where requested instructions are refused when the general charge fairly and correctly states the applicable law. Cameron v. Evans, *supra*.

■ We have also examined plaintiff's assignment that the court erred in failing to instruct the jury relative to defendant driver's duty to keep and maintain a proper lookout as he approached the intersection. While again the instruction might have been worded better, it did state:

"* * * we have got to use care, if we are driving a car to see that we don't injure the property of others, that we don't injure other people,

and we have got to use our eyes to see that and our brain, our senses must follow what our eyes see. That applies to the plaintiff and to the defendant. * * * It is the duty of a defendant driving an automobile to use his eyes to see what should be seen. It is the duty of a person who is walking, even though they are walking with a green light, you still have to exercise reasonable care. Even though you are right in the crosswalk and you have the green light with you, the right-of-way, you still have got to exercise reasonable care for your own safety."

In our opinion this was sufficient.

Viewing the record in its entirety, it is our opinion that the trial court should be affirmed.

Affirmed.