# FRANK KONKEL v. JACK ERDMAN.

95 N. W. (2d) 73.

February 13, 1959—No. 37,257.

*Hvass, Weisman, Peterson, King & Schwappach* and *Roy A. Schwappach,* for appellant.

*Freeman, Peterson, Hoppe & Gaughan* and *Robert L. Hoppe,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for a new trial.

On the night of February 14, 1955, plaintiff, aged 58 years, left the auditorium in Minneapolis at about 11 p. m. to go to his home in that city. He walked easterly on Grant Street to Fourth Avenue South to

catch a bus. When he arrived there, he stood at the bus stop for a few minutes, but when no bus came along, he walked southerly on the west side of Fourth Avenue to Fourteenth Street where he waited "a minute or so" and then proceeded southerly again. When he reached the north-west corner of the intersection of Fourth Avenue South and Fifteenth Street, he looked north on Fourth Avenue but did not see any bus approaching. He said that before crossing Fifteenth Street he stood on the sidewalk at the curbstone and looked to his right, down Fifteenth Street; that he saw a car parked near the center of Fifteenth Street, about a half block, 100 or 150 feet away; and that the car had its dim lights on. According to his testimony he did not see any moving car. He then proceeded to cross the street at that intersection, walking straight south, but he did not look to his right again.

It is undisputed that while the plaintiff was on the west crosswalk at Fourth Avenue and Fifteenth Street a collision occurred between him and defendant's automobile. When questioned as to how far across Fifteenth Street he had traveled before the accident occurred, plaintiff said that he was about two-thirds of the way and not over 7 or 8 feet from the south curb of Fifteenth Street. He stated, "I only had about two more steps to take and I would have been on the curbstone." He also said that just prior to the time he was hit he did not hear any warning sounds like a horn from an automobile nor did he see any headlights of any vehicle, but that he felt "an awful crash like some-thing hit me on the head, and my feet * * *." He explained that when he felt his feet leave the ground he did not remember anything there-after except being lifted into an ambulance. The next he recalled was when he "come to" for a few minutes in the General Hospital.

Defendant testified that he was the owner and operator of the auto-mobile which struck a pedestrian, who he later ascertained was the plain-tiff. It appears from his testimony that it was the right front of his car that struck the plaintiff. He said that he had been at the Minnehaha Gardens, a tavern at 37th and Minnehaha, Minneapolis, on the evening of the accident for about 3 hours. When questioned on cross-examina-tion in connection with previous testimony to the effect that he arrived at the tavern at 6 p. m. and left about 10:30 p. m., he answered, "if that is what I gave, that is what it was," but he put his arrival time

somewhere between 6 and 7 p. m. In any event he testified that about 11 p. m., just prior to the accident, he was alone in his car, traveling east on Fifteenth Street; that when he was about a half a block west of Fourth Avenue he was driving at approximately 20 miles an hour but slowed down to an estimated speed of 10 to 15 miles an hour at the intersection; and that the lights of his automobile were on and in good condition so that he could see at least 50 feet in front of his automobile.

Defendant claimed that as he approached the intersection before the collision he observed an arc light on what he thought was the northeast corner of the intersection, extending on an arm not long enough to reach the center of the street. It was his impression that the corner was "extremely poorly lit" as the extension light was "a long ways up and a single bulb" and did not throw much light down on the intersection itself. In this connection there was also other testimony with reference to the street light. Plaintiff said that it was just an ordinary electric light that hangs overhead. A traffic officer described it as a single light with a globe overhanging on the southeast corner. The officer also said that there were two beer taverns on the west side of Fourth Avenue, north and south of Fifteenth Street; that they were lighted and open that night; that there was activity around the buildings; also that there was a laundry on the southeast corner and on the other side an apartment building.

With reference to the driving conditions and space on Fifteenth Street, defendant estimated that between cars parked on either side there were 12 to 14 feet. The officer testified that the width of Fifteenth Street on the westerly side of the intersection was approximately 29 feet; also that the streets were wet.

Defendant said that as he approached the intersection at 10 to 15 miles per hour he had his headlights on and the windshield of his car was clear; that he was looking ahead but did not see plaintiff pass in front of his automobile; and that the first that he noticed plaintiff was at the time of the impact. At another place in his testimony defendant said that he assumed that plaintiff came from the south curb just before the accident because "I never saw the man."

He said that he stopped his car as soon as he could after the accident; that the forward part of his car was not out in the center of

Fourth Avenue; and that he got out and went over to plaintiff who was in the crosswalk. He claims that when he got there plaintiff was "on his knees and his hands" attempting to get up; that he asked plaintiff if he thought that he ought to get up; and that the latter said "yes," so he assisted him in getting up. He also claims that while plaintiff stood there he said he would like to have defendant take him home but that about that time some people came out of the taverns and defendant requested them to telephone for an ambulance. He said that he told plaintiff he did not think he ought to go home. He explained that he moved his car so that the plaintiff could sit in it until the ambulance arrived, which it did in 10 or 15 minutes. He stated that he remained with plaintiff until the ambulance arrived, during which time the latter said that his head hurt and indicated a desire to go home.

Shortly after the arrival of the ambulance, Bruce Ahr and Robert Carlson of the police department arrived. Defendant denied that he told Ahr that he saw plaintiff walk out from the curb but said that when the officer asked him what happened he told him he "really didn't know." As he recalled in talking with the officer he made it apparent that he had assumed that plaintiff "stepped into the car because I was very definite, very sure that he hadn't passed in front of the car." He further explained that in discussing the incident with the officer "we noticed a brush mark on the door, and I think it was conjecture on both our parts that he had walked into the side of the car." He summarized by saying that he did not know just where plaintiff came from or just where the impact had taken place as he was not sure whether plaintiff walked into the side of the door or into the forward portion of the car.

Officer Ahr testified that when he reached the scene the ambulance had already arrived and they were putting plaintiff into it. He said that defendant's car was at the intersection and that he talked with him about the facts of the accident. It was his recollection that defendant stated that plaintiff was walking from the south to the north on the west crosswalk of Fourth Avenue and that he had walked into the right side of his car. He claims that he asked defendant to point approximately where contact was made by plaintiff on defendant's car and that the latter showed him a mark on the right door. He also said that defendant told him that the first time he had seen plaintiff before or at the accident

was "upon contact." When asked if defendant told him where plaintiff was at that time, the officer replied that the defendant placed him about 3 feet from the south curb on the west crosswalk of Fourth Avenue. The officer also testified that he observed plaintiff at the scene of the accident and it was his impression that the latter was in a semiconscious condition. He claimed that defendant's car had been moved before the witness arrived at the scene of the accident and that there were skid marks but he could not determine that they were from defendant's car.

It will be recalled that defendant had also testified that he moved his car after the accident so that plaintiff could be seated in it until the ambulance arrived.

The officer claimed that he detected what he thought to be a strong and noticeable odor of alcoholic spirits on defendant's breath. He claimed that defendant stated that he had been drinking at the Minnehaha Gardens. It was his observation that defendant's eyes were watery, his talk slurred and slightly slow, and his walk unsure, and he thought that defendant was "under the influence to the point where his ability wasn't as it should have been as far as driving goes."

Officer Carlson, who accompanied Ahr to the scene of the accident, also said that when he arrived the ambulance was already there; that he observed plaintiff standing by the right front door of defendant's car; and that plaintiff walked to the ambulance with the assistance of the ambulance doctor and driver. He said that the car was by the southwest corner of the street; that he talked with defendant at that time and he stated that plaintiff had walked into the side of his car at the right door. He claimed from his talk with defendant and other indications that the impact took place in the crosswalk. He found upon an examination of defendant's car that a certain portion of the right front bumper was clean as though it came in contact with something and there was a dent in the headlight rim. He described the intersection involved as a narrow one and said that the westerly side of Fifteenth Street was about 29 feet wide and the easterly side about 33 feet wide and that the street light was a single light with the globe overhanging on the southeasterly corner.

The officer also claimed that he determined from an observation of defendant at the scene of the accident that the latter had been drinking

as he detected a strong odor of "distilled spirits" on his breath; that his eyes were bloodshot, his face pale, and he was unsteady on his feet. He stated that defendant told him he had some "distilled spirits" at the Marigold Gardens, as the officer recalled, which in the latter's opinion impaired defendant's driving ability but not to the extent that "he was under the influence or should be so charged."

Defendant claimed that he did not think he was under the influence of intoxicating liquor or that his ability to drive was impaired.

Plaintiff brought this action against defendant to recover damages for personal injuries alleged to have been sustained by him as a result of being struck by defendant's automobile. The case was submitted to the jury on the negligence of defendant and contributory negligence of plaintiff proximately causing the injury, and the jury returned a verdict in favor of defendant. Plaintiff moved for a new trial, and this appeal is from the order denying his motion.

The only legal issue raised by plaintiff on appeal is whether the jury should have been instructed that the defendant was negligent as a matter of law. Plaintiff contends that it is undisputed that the defendant violated M. S. A. 169.21, subd. 2, and as a result a prima facie case of negligence is established in accordance with § 169.96.

Section 169.21, subd. 2, provides in part:

"Where traffic-control signals are not in place or in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

Section 169.96 provides in part:

"In all civil actions, a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only."

Plaintiff in his assignment of error contends that the trial court erred in submitting to the jury the issue of defendant's negligence and in refusing to give plaintiff's requested instruction that the defendant was guilty of negligence, which negligence proximately caused or contributed to cause the accident and injuries involved. He argues that it is well settled that a violation of § 169.21, subd. 2, constitutes a prima facie case of negligence and that when there is no evidence tending to show a reasonable justification for the violation it is negligence as a matter of law. He urges that the undisputed evidence clearly establishes that he was struck on his right side by the right headlight and bumper of defendant's car when he was well into the south half of the crosswalk and that therefore a violation of § 169.21, subd. 2, is unequivocally established. He contends that defendant did not introduce any evidence to show reasonable justification for such violation and that it was therefore prejudicial error to submit to the jury the issue of negligence.

In support of his contentions plaintiff cites certain Minnesota cases which we shall consider. In Tschida v. Dorle, 235 Minn. 461, 51 N. W. (2d) 561, it was determined that the defendant motorist was negligent as a matter of law in making a left-hand turn when the vehicle approaching from the opposite direction was so close as to constitute an immediate hazard.

In Berger v. Western Union Tel. Co. 233 Minn. 227, 46 N. W. (2d) 471, this court said that where it was established that a pedestrian was crossing the street within a crosswalk with traffic lights in her favor and was struck by defendant who made a left turn and failed to see her it was not error for the court to direct a verdict on the question of liability. (In the instant case no traffic lights were involved.)

In Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409, this court said that a statute (now M. S. A. 169.21, subd. 5), which required pedestrians to walk near the left side of the roadway, giving way to oncoming traffic, also applied to divided highways so that a pedestrian struck while walking on the wrong lane, with the traffic rather than against it, was prima facie guilty of negligence. This court also said there that the trial court correctly held that there was no question of fact inasmuch as decedent's conduct, whether negligent or not, in walking on the northbound highway near the center, with the

traffic, was a violation of the statute and was plainly the proximate and contributing cause of the accident; that the conduct though not negligent per se was prima facie evidence of negligence. We concluded that the verdict for the defendant was properly directed in the absence of evidence tending to show that the conduct of decedent was not negligent.

Defendant contends that the trial court did not err in submitting to the jury the issue of his negligence and calls our attention to the well-known rule that on appeal the evidence must be viewed in the light most favorable to the prevailing party. He argues that it would have been error for the trial court to have instructed the jury that defendant was guilty of negligence as a matter of law. He contends that there was a dispute in the evidence and that there was no showing that he was guilty of negligence as a matter of law. According to his version the accident occurred at an intersection where the streets were narrow; it was dark; the intersection was poorly lighted; the streets were wet; and plaintiff was dressed in a gray hat and coat. He claims that he was watching the road ahead of him at all times and at no time saw plaintiff pass in front of him; that he was going at a reasonable rate of speed and had his automobile under control; and that he had his headlights on and was not under the influence of alcohol. He refers to plaintiff's testimony that the latter at no time saw defendant's automobile; to the fact that plaintiff never looked for automobiles after leaving the curb to cross Fifteenth Street; and that there were no stop signs or traffic signals at the intersection, a fact which he claims plaintiff knew.

Defendant further argues that an instruction that he was guilty of negligence as a matter of law which proximately caused the accident and injury could not have been premised on improper speed, failure to keep a proper lookout, or failure to yield the right-of-way under § 169.21, subd. 2.

Defendant cites the following cases as controlling: Hickok v. Margolis, 221 Minn. 480, 22 N. W. (2d) 850; Thomas v. Mueller, 251 Minn. 470, 88 N. W. (2d) 842; Becklund v. Daniels, 230 Minn. 442, 42 N. W. (2d) 8.

Hickok v. Margolis, *supra,* was an action for personal injuries sustained by plaintiff when struck by an automobile while lawfully crossing a street within the designated confines of an intersection. It was held

that defendant driver's negligence and plaintiff's contributory negligence were fact issues for the jury's determination and that verdict for defendants was supported by the evidence.

Thomas v. Mueller, *supra,* involved a pedestrian who was struck by an automobile while crossing an intersection controlled by automatic stop-and-go signals. The jury returned a verdict for defendants, and upon appeal from an order denying plaintiff's motion for a new trial on the issue of damages only or in the alternative on all issues, the plaintiff contended that the court erred in denying her motion for a directed verdict on the question of liability and in submitting the question of defendant's negligence and plaintiff's contributory negligence to the jury. We held there that in view of evidence that it had been raining or drizzling at the time of the accident; that the pedestrian might have been running as she crossed the intersection; that the signal light had been green for the pedestrian but that it changed to red as she started to cross the street; and that she was wearing dark clothes at the time of the accident, the questions of negligence of the driver and the pedestrian's contributing negligence were for the jury.

Defendant claims that the case which settled the issue is Becklund v. Daniels, *supra.* Plaintiff there was injured while walking across an intersection when he came in contact with a car driven by defendant. The jury returned a verdict for defendant, and plaintiff appealed from an order denying his motion for a new trial. Plaintiff contended defendant was guilty of negligence as a matter of law. This court did not agree that the evidence compelled such a finding, stating that while a pedestrian has right-of-way over vehicles at intersections where there are no stop-and-go lights if he is within the area of the crosswalk the right-of-way does not absolve him from the exercise of ordinary care for his own safety under circumstances that would deter a person of ordinary prudence from relying on the right-of-way. We also held there that a violation of the pedestrian right-of-way statute was only prima facie evidence of negligence. In that case the defendant admitted that he did not see the plaintiff until just about the time the contact occurred and that he did not see in what direction plaintiff was going. There was evidence that the windshield on defendant's car was somewhat dirty

but not enough to interfere with his vision. Defendant testified that he was looking straight ahead in front of his car and that at no time was there any pedestrian in the path of his car as he made the turn to the right. Defendant was driving with the city lights on his car, the beam of which shifted somewhat from the left side of the road. The distance of illumination in front of the car was about 100 feet. The surface of the street was dark. We held there that since there was evidence tending to show a reasonable explanation for failure to yield the right-of-way to the pedestrian the court properly submitted the negligence of the defendant to the jury.

In Peterson v. Minneapolis St. Ry. Co. 236 Minn. 528, 53 N. W. (2d) 817, this court said that the failure to see a pedestrian upon the street is usually evidence of negligence requiring the issue to be submitted to the jury and held that the court did not err in refusing to instruct the jury that the defendant was guilty of negligence as a matter of law.

We have held that the violation of a motor vehicle statute may constitute a negligent act in the absence of excuse or justification therefor, but when evidence of excuse or justification appears it is for the jury to determine whether such statutory violation constitutes negligence. Becklund v. Daniels, *supra;* Thomas v. Mueller, *supra.*

It is our opinion that under the facts and circumstances here the trial court did not err in failing to instruct the jury that defendant was negligent as a matter of law on the ground, as claimed by plaintiff, that it was undisputed that defendant violated the pedestrian right-of-way statute and that therefore an unrebutted prima facie case of negligence was established. Rather it appears to us that the record presents fact issues for the jury. While we might question why defendant did not see the plaintiff, there was testimony that there were cars parked on both sides of Fifteenth Street; that the available driving space was narrow; that the street was dark and wet; that the intersection was poorly lighted; that the plaintiff was wearing a gray hat and coat; that he saw no moving cars; and that defendant never saw plaintiff until the impact. In addition there was the disputed testimony that defendant was under the influence of alcohol and that his driving ability was

impaired. These were all matters for the jury to consider on the issue of his negligence.

Affirmed.