## BAUMGARTEN *v.* TASCO.

1. PLEADING—MOTION TO DISMISS—TIME—WAIVER OF DEFECTS.

Defects in declaration must be considered as having been waived where defendants did not file motion to dismiss declaration until over a year after it had been filed (Court Rule No. 27, § 6 [1933]).

2. CARRIERS—SUDDEN JERKS OR JOLTS—PASSENGERS.

Sudden jerks or jolts in stopping to let off and take on passengers and in starting are among usual incidents of travel on carriers which every passenger must expect and mere fact that a passenger is injured thereby will not of itself make out a case of negligence which will render the carrier liable although carrier may be liable if the jerk or jolt is unnecessarily sudden or violent.

3. SAME—CARE REQUIRED AS TO SAFETY OF PASSENGERS.

A carrier is not an insurer of the safety of those it undertakes to transport but is merely required to exercise that skill, diligence and foresight for the safety of its passengers consistent with the practical conduct of its business.

4. AUTOMOBILES—STATUTES—SPEED—NEGLIGENCE PER SE.

Violation of statutory provisions relative to speed of motor coach in business district constitutes negligence *per se.*

5. SAME—ORDINANCES—TAXICABS—SPEED—EVIDENCE—QUESTION OF FACT.

In passenger's action against owner and operator of taxicab for injuries sustained by plaintiff shortly after entering cab when she was thrown forward from back seat and then out of cab as it was brought to a sudden stop, evidence presented a question of fact as to whether operator violated city ordinance in driving cab at an excessive speed (1 Comp. Laws 1929, § 4697, as amended by Act No. 318, Pub. Acts 1939; Detroit Ordinance No. 115 D, §§ 13, 15).

Question of fact for the jury presented as to defendant's negligence, see 2 Restatement, Torts, § 434, comment c; standard of conduct defined, see 2 Restatement, Torts, § 284 and comments, § 285 and comments.

6. EVIDENCE—ACCIDENT PREVENTION BUREAU REPORT.

Testimony of witness, a policeman, as to what defendant taxicab operator told witness after the accident occurred was admissible in injured party's action for damages for injuries sustained when thrown from taxicab as it was suddenly stopped, where witness testified he wrote down the statements and had no independent recollection of what was said aside from accident prevention bureau report containing the statements and from which he testified.

7. SAME—HEARSAY—CORROBORATION—OBJECTION.

Admission of hearsay testimony which corroborated testimony of other witnesses and which was received without objection did not constitute prejudicial error.

8. SAME—ACCIDENT PREVENTION BUREAU REPORT—QUALIFIED ADMISSION.

Admission of city accident prevention bureau's report was not prejudicial error where admission was qualified by trial court to admission of such parts of the report as came within the knowledge of person who made the report and who testified therefrom.

9. DAMAGES—REGISTERED NURSE—HIP INJURY—LOSS OF EARNINGS—HOSPITAL AND DOCTOR BILLS.

Verdict of $2,250 for registered nurse who was injured as result of defendants' negligence held, not excessive where she had hospital and doctor bills totalling $248, loss of earnings of $225, was inactive for about 8 weeks during which time she suffered considerable pain, and right hip was left larger than the left.

10. APPEAL AND ERROR—TAXICABS—NEGLIGENCE—GREAT WEIGHT OF EVIDENCE.

Verdict for passenger in action against taxicab owner and operator was not against the great weight of the evidence on question of negligent operation of the taxicab.

11. SAME—QUESTIONS REVIEWABLE—STATEMENT OF QUESTIONS INVOLVED—BRIEFS.

Alleged error in failure to give certain requested instructions which was not stated in appellant's statement of questions involved nor briefed is not passed upon.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted June 27, 1945. (Docket No. 13, Calendar No. 42,980.) Decided October 8, 1945. Application for rehearing dismissed on stipulation November 9, 1945.

Case by Ruth Baumgarten against Joseph Tasco and Sam Heller for personal injuries sustained when taxicab in which she was riding stopped suddenly. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Dann, Atlas & Tilchin,* for plaintiff.

*Edward N. Barnard,* for defendants.

SHARPE, J. This case is an action for damages for personal injuries alleged to have resulted while plaintiff was riding as a passenger in a taxicab owned by defendant Joseph Tasco and operated by defendant Sam Heller.

The declaration alleges that on November 5, 1941, at or about the hour of 7 p.m., plaintiff became a paid passenger in the above-mentioned taxicab; that as she entered the cab she sat in the left rear seat; that the cab started up with tremendous speed and almost crashed into an automobile in front of it; and that defendant Heller suddenly and forcibly applied the brakes causing an unusually sudden stop, whereby plaintiff fell forward, causing the door to open, whereupon plaintiff fell out onto the pavement and was injured. Plaintiff claims damages for loss of earnings, hospital and doctor bills, nursing bills, pain and suffering, and permanent impairment of earning capacity.

Action was started by summons February 13, 1942, and a bill of particulars was filed April 1, 1942. Defendants filed an answer to the declaration April 20, 1942. On June 29, 1943, defendants filed a motion to dismiss plaintiff's declaration for the following reasons:

"1. Said declaration states no cause of action.
"2. Said declaration does not allege any negligence.

"3. Said declaration alleges duties without breach thereof and such allegations do not constitute allegations of negligence.

"4. Said declaration sets up no facts which constitute negligence.

"5. Said declaration with relation to allegations of negligence is composed of mere conclusions of the pleader.

"6. The said declaration does not appraise [apprise?] the defendants of any cause of action which they are called upon to defend.

"7. The said declaration as it relates to allegations of negligence is composed of conclusions of the pleader and allegations of evidence and not statements of ultimate issues of fact."

On July 13, 1943, the trial court denied defendants' motion to dismiss plaintiff's declaration. Thereafter, the cause came on for trial.

At the close of proofs, defendants made a motion for directed verdict on the ground that plaintiff had not offered proof of defendants' negligence; that a carrier is not liable for a sudden stop; and that plaintiff was guilty of contributory negligence.

The trial court denied the motion. The cause was submitted to the jury and a verdict for $2,250 was returned in favor of plaintiff. Judgment was entered on the verdict.

On January 19, 1944, defendants made a motion for a new trial, alleging:

"1. The verdict was contrary to the great weight of the evidence.

"2. The verdict was excessive in amount. * * *

"6. The court erred in admitting the testimony of the witness Reiman as to the contents of the report of the accident prevention bureau of the Detroit police department.

"7. The court erred in permitting the witness Reiman to testify as to alleged statements of the

defendant Heller with reference to the accident involved in said action.   *   *   *

"11.   The court erred in failing to instruct the jury as requested by the defendants in requests numbered 8, 11, 12, 13, 14 and 15.

"12.   The verdict was excessive in that it clearly requested an award of compensation for alleged losses of earnings which were claimed for alleged scoliosis of the spine which was not caused by the accident according to the great weight of the evidence.

"13.   The court erred in instructing the jury as to specific State statutes relating to the operation of motor vehicles when the plaintiff had not specifically pleaded such statutes."

The trial court denied defendants' motion for a new trial.   Defendants appeal and urge that the declaration should have been dismissed on motion. We note that the motion to dismiss plaintiff's declaration was filed June 29, 1943, more than a year after plaintiff's declaration was filed.

Court Rule No. 27, § 6 (1933), provides that: "A motion attacking a pleading must be filed and served within 15 days after the receipt of the pleading attacked."   Under the above rule defendants' motion, not having been timely made, any defect in plaintiff's declaration must be considered as waived.

Defendants also urge that their motion for a directed verdict should have been granted upon the theory that no negligence was shown by the proofs in behalf of plaintiff.

Charles D. Hunter, a witness produced in behalf of plaintiff, testified:

"We had no sooner been seated than the cab started away from the curb with a sudden jerk.   As I remember it, I was thrown backwards against the rear seat.   We had no sooner become started than the cab had turned to its left to get into the stream

of traffic when the cab driver applied his brakes very hard, so that all three of us were thrown forward.

"I do not remember any vehicle immediately in front of us that stopped suddenly, and my best recollection is that the traffic which was proceeding in the same direction we were had stopped for a traffic signal even before we started away from the curb. In any event, I remember being thrown forward against the door handle of the left rear door with the result that the door flew open and she fell out of the cab. * * *

"As I remember the incidents surrounding the scene of the accident, it is my definite impression that the driver of the cab was attempting to crowd into the line of traffic, in an endeavor to get ahead of cars coming along behind us."

Defendants rely upon *Sherman* v. *Flint Trolley Coach, Inc.*, 304 Mich. 404. In that case we held that sudden jerks or jolts in stopping to let off and take on passengers and in starting are among usual incidents of travel on trolley buses which every passenger must expect; and that a trolley bus company is not an insurer of the safety of those it undertakes to transport, but is merely required to exercise that skill, diligence and foresight for the safety of its passengers consistent with the practical conduct of its business.

In *Longfellow* v. *City of Detroit*, 302 Mich. 542, we held that violation of statutory * provisions relative to speed of a motor coach in a business district constitutes negligence *per se*.

Plaintiff was a witness in her own behalf and testified as follows:

"I hadn't gotten myself completely seated before the cab started with terrific speed and a sudden jolt

---

* See 1 Comp. Laws 1929, § 4697, as amended by Act No. 318, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4697, Stat. Ann. 1944 Cum. Supp. § 9.1565).—Reporter.

which threw me back and the other two people that was with me. It threw me back against the back seat, and I would judge the distance to be between 75 and 50—50 to about 75 yards that he drove, and without any warning whatsoever he applied the brakes very abruptly, and of course it was rather surprising, and—I mean, there wasn't any reason I could see for him doing that. And at that moment the brakes were applied, the three of us fell forward, I hitting my head on the window between the front and the back seat. And then out of the door. I don't remember hitting the door because I was rather stunned and in a shock as well. As I remember, upon entering the cab the light at the corner of Forest and John R. was already red, and there was a car parked in the lane of traffic. So for that reason—I don't know why he would stop so suddenly knowing that eventually he would have to stop when he got there. There was one car directly in front of the cab. There was no car in front of him at the curb. When he pulled into the lane of traffic and stopped at the signal light this car was in front of him. It was stopped. It was at the intersection of John R. and Forest waiting for the signal light. It was standing still. There wasn't anything in my view that would cause him to stop. I was able to view that through the window that leads from the back seat to the front seat, in front of which the cab driver sits. I was directly in back of that window and I had occasion to see that there were no obstructions. The cab was traveling that particular distance, this 50 to 75 yards, I would say between 30 and 35 miles an hour.''

The trial court instructed the jury as follows:

''Under the law of this State, a driver or owner of a public vehicle for hire, a taxicab, is not liable for injuries sustained as a result of sudden stops or starts of a public vehicle, but that such starts and stops are to be expected in the ordinary conduct of such a business; that a passenger in such a ve-

hicle must anticipate such sudden starts and stops as likely to occur and to be on her guard against them to protect herself from injury. * * . *

"The plaintiff here, in order to recover, basing her claim, as I say, upon the fact that she was thrown from her seat by an unusual stopping of the car, something that she could not anticipate and could not protect herself against. In that regard, members of the jury, I charge you that ordinary sudden jerks or jolts in stopping or starting are among the usual incidents of travel in taxicabs which the passenger must anticipate. Plaintiff must establish that it was an unusually sudden stop and that her fall was not occasioned by any act of negligence, however slight, on her part. Before the defendants can be held liable in this case, it must appear, members of the jury, by a preponderance of the evidence on behalf of the plaintiff that the jerk or jolt was unnecessarily sudden and violent; that is, more than the ordinary jerk or jolt or sudden stoppage that could be expected and must be expected in the ordinary course of travel in a vehicle of this nature. * * *

"Now, counsel for the plaintiff has offered in evidence certain ordinances of the city of Detroit. The ordinance is identical with the language of the statute as well. The statute provides that any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway, and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead. There is no claim here that there was any collision between two vehicles so that the last part of that would not apply. The degree of care is recited in the same language in the ordinance, Ordinance No. 115–D, of the city of Detroit.

"Likewise, members of the jury, with reference to the speed of the vehicle, the ordinance provides (section 13):

" 'Subject to the provisions of subdivision (a) of this section, and except in those instances where a lower speed is specified in this ordinance, it shall be "prima facie lawful for the driver of a vehicle to drive at a speed not exceeding the following, but in any case when such speeds shall be unsafe, it will not be lawful. Twenty-five miles an hour on all highways in a business district, and, equally, 25 miles an hour on all highways in the residential districts.

"Now, the law is likewise uniform in the State statute.

"The ordinance provides:

"It shall be prima facie unlawful for any operator to exceed any of the foregoing speed limitations.

"It is likewise provided in the ordinance offered here in evidence, section 15, that:

" 'The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway.'

"Now, a violation of a statute is negligence *per se*. That is, negligence itself, no further proof being necessary. The violation of an ordinance is evidence of negligence. If you find that the defendants in this case violated the ordinance, then I charge you, members of the jury, that it is your duty to consider that as a matter of evidence in determining whether or not the plaintiff has satisfied you of her right to recover in this case."

From plaintiff's testimony the jury could have found that defendant Heller violated the city ordinance in driving the taxicab at an excessive speed.

Under the authority of the *Longfellow Case*, *su-*

*pra,* there was a question of fact for the determination of the jury. The trial court was not in error in submitting the case to the jury.

It is also urged that the trial court was in error in admitting exhibit 13 in evidence and in permitting witness Reiman to testify as to its contents. Exhibit 13 is a report made by witness Reiman from statements of people involved in the accident. It is a record of the accident prevention bureau. When the report was first offered in evidence, it was in the custody of witness Conner, a sergeant of police connected with the accident prevention bureau.

The trial court admitted the exhibit upon the following conditions:

"I will admit so much of the record as is shown to be material here. Often police records contain hearsay evidence and observations that are not supported by any proof. Thus that part of the report would not be competent and it would be error to admit the entire report. You may use the report for as much of it as comes within the knowledge of the officer here. He is the mere custodian, and that admits it in the record as an exhibit, as the report, but it does not necessarily leave into evidence here all of its contents."

Later, witness Reiman testified that he made the report, and that he was not present when the accident occurred. Objection was made to witness Reiman testifying to a diagram of the accident contained in the report. The trial court sustained the objection. Reiman also testified that he had no independent knowledge of what defendant Heller and other witnesses told him, but that he wrote down statements from questions he asked them; and that whatever he wrote down on the report was true or he would not have put it there. Objection was made

to the testimony of witness Reiman when he testified from the use of the exhibit as to what defendant Heller told him about the collision. The testimony of the witness as to what one of the defendants told him after the accident occurred was clearly admissible. Objection was also made to the witness testifying as to what the plaintiff and other witnesses told him. Such testimony was hearsay evidence, but we note there was no objection to such testimony as it was being given, nor was the trial court asked for any instruction concerning such testimony. Moreover, such testimony was at most only cumulative of other competent testimony. Under the circumstances in this case, the admission in evidence of the exhibit as qualified by the trial court and the testimony of witness Reiman was not prejudicial error.

It is next urged that the verdict was excessive. We have in mind that plaintiff was a registered nurse; that prior to the accident and injury she was in good health; that subsequent to her injury her right hip was larger than the left; that prior to the injury she worked regularly and since said time she has not been able to work regularly; that she remained in the hospital for a period of 13 days and thereafter she stayed at her sister's home for a period of six weeks, during all of which time she suffered considerable pain; that her hospital and doctor bills amounted to $248; and that her loss of earnings up to January 17, 1942, when she returned to work, amounted to $225. Under such circumstances we cannot say that the jury arrived at an improper verdict.

It is also urged that the verdict was contrary to the great weight of the evidence. In our opinion there was evidence that the taxicab was operated in

a careless and negligent manner. The evidence does not warrant a finding that the verdict was contrary to the great weight of the evidence.

In defendants' statement of reasons and grounds for appeal, the claim is made that the trial court was in error in not giving certain requested instructions. This claim is not stated under defendants' "questions involved," nor is the question briefed. Under such circumstances, we decline to pass upon it.

The judgment is affirmed, with costs to plaintiff.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.