# PHYLLIS E. ROCKWOOD v. REUBEN PIERCE.[1]

February 1, 1952.

No. 35,543.

---

[1]Reported in 51 N. W. (2d) 670.

*Catherwood, Hughes & Alderson,* for appellant.
*Plunkett & Plunkett,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order denying plaintiff's alternative motion for judgment notwithstanding a verdict for defendant or for a new trial.

This case arises out of a collision between two automobiles. Only the facts pertinent to a determination of the issues raised by the appeal will be stated. Plaintiff, Phyllis E. Rockwood, and her husband, Ralph Rockwood, lived in Janesville, Iowa. They owned a fishing cabin on Lake Francis near Elysian, Minnesota, together with Mr. and Mrs. Henry Bolt, who also resided in Janesville. About 1 a. m. on May 21, 1950, Mr. and Mrs. Rockwood and Mr. and Mrs. Henry Bolt left Janesville for their cabin in an automobile owned by Mr. Bolt. They were accompanied by Mrs. Rockwood's sister-in-law, Florence Shepard, and her husband, who drove their

own car. At the beginning of the journey, Mr. Bolt drove his car, Mr. Rockwood riding in the front seat with him, while Mrs. Rockwood and Mrs. Bolt occupied the back seat. After they had driven some distance and had reached a point just north of Lyle, Minnesota, Mrs. Rockwood took over the task of driving. They drove through Austin, Minnesota, where they stopped and obtained some information regarding the roads from a highway patrolman, Norman Sollie, and then proceeded north on U. S. highway No. 218, followed by the Shepard car.

The other car involved in the collision was driven by defendant, Reuben Pierce. After working on a farm near Geneva, Minnesota, all day, he drove to Blooming Prairie about 8 p. m. From there he went to Austin, where he met a Mrs. Nina Pacholl by appointment. They then returned to Blooming Prairie. After visiting several places at that location, they left about 1 a. m. for Ellendale. Thereafter, they returned to a night club near Blooming Prairie, following which they started for Austin on U. S. highway No. 218, driving in a southerly direction.

The Bolt car and the Pierce car approached each other at a point about eight or ten miles north of Austin. When about one-half mile apart, the lights of both cars were dimmed. Each car was going between 40 and 50 miles per hour. Up to this point there is not much dispute in the testimony. From this point on, however, the testimony of the parties differs radically. Mrs. Rockwood claims that she was in the center of her lane of the highway and that as she approached the Pierce car she noticed, when they were separated about a block and a half or two blocks, that the Pierce car had drifted toward the center of the highway. She then released her foot from the foot feed and watched to see what the driver of the Pierce car would do. She claims that when about 75 to 100 feet away the Pierce car swerved farther to her side of the highway, so that it occupied her lane. She thought of taking to the ditch, but it was dark and rainy, and she feared that she might be hit broadside if she turned to the right. According to her testimony, the left lane was clear, so she pulled to the left, believing that she could

clear the Pierce car by so doing. She testified that there were no other cars coming from the north. The cars collided, and that is all she remembers. Mrs. Bolt and Mr. Rockwood were killed outright, Mr. Bolt died later, and Mrs. Rockwood was seriously injured.

Mrs. Rockwood is corroborated in her testimony by Richard J. Shepard. He testified that he followed the Bolt car at a distance of about a block and a half, and that Mrs. Rockwood was driving in her lane. He saw the cars dim their lights, and he dimmed his about the same time. He testified that he observed the Pierce car drive to the center of the highway; that in a short time one of the headlights was not visible; and that he then saw a large flash. Mrs. Shepard was dozing at the time, so she could add nothing to his testimony.

Defendant, Pierce, claims that he was at all times on his side of the highway and that the Bolt car turned sharply into his lane of travel. He is corroborated by one John Van Epps, Jr., who at the time of the trial claimed that he was following the Pierce car at a distance of about three blocks. He testified that the Pierce car remained on its side of the highway; that it never crossed the center line; and that the lights of the Bolt car disappeared and reappeared on the west side of the Pierce car. Prior to the trial, Van Epps testified at a coroner's inquest, and it is claimed that he then said nothing about following the Pierce car. When questioned about his failure to do so, he stated that he did not remember whether he said anything about it or not. In some other respects his testimony is not too convincing.

After the collision, the car driven by plaintiff ended up in the ditch on the west side of the highway, facing south, upside down, and about 25 feet north of the Pierce car. The Pierce car ended up facing in an easterly direction, the front end extending out onto the shoulder on the east side of the highway, with the rear wheels on the pavement, about half of the car being on the pavement and half on the shoulder. Most of the debris was on the west lane of the highway.

On the morning of the collision, Officer Sollie, Sheriff Albert Reinartz, two doctors, and a nurse called on defendant at the hospital, where he had been taken, and questioned him about the collision. Plaintiff sought to have the officer testify to what defendant then told him. Defendant objected, and the following proceedings then took place:

"Q. And did you ask Mr. Pierce as to how he thought the accident happened?

"A. Yes.

"Q. And what was his answer?

"Mr. Plunkett: Just a minute, I would like permission to ask the witness a question for the purpose of laying a foundation for an objection.

"The Court: You may do so.

"Examination by Mr. Plunkett:

"Q. Mr. Sollie, at the time you saw Mr. Pierce in the emergency room in St. Olaf Hospital on the morning in question, you were acting in your official capacity as a highway patrolman?

"A. I was.

"Q. And you went in there to investigate the accident and get information in regard to it in connection with your official duties as such?

"A. That's right.

"Q. For the purpose of making a report which you are required to do?

"A. Yes, sir.

"Q. In connection with an accident of this kind?

"A. That's right.

"Q. And you informed Mr. Pierce, did you, that that was the purpose of your visit to him and questioning of him?

"A. I don't remember whether he was told that it was for the purposes of a report or not.

"Q. Well, he was told that he was required to give you whatever information he had in connection with the accident, wasn't he?

"A. Yes, I believe so.

"Q. That the law required it because you had to make a report, isn't that true?

"A. Yes.

"Mr. Plunkett: We object to the question on the ground that it is not permitted by the statute.

"The Court: How does the statute read now?

"Mr. Kelley: I believe I have a copy of the statute here, your Honor. The report itself is confidential but not information concerning the investigation.

"Mr. Plunkett: He further testified that he told him he had to have this information, isn't that true?

"A. It would not be unusual if I did. As a matter of practice they are usually told that it is information we want for the reports. Whether I actually told Mr. Pierce that that morning or not, I don't recall.

"The Court: The Court, in view of the fact that the information that was elicited from the defendant Pierce was for the purpose of placing the same in the report, or in a report required by the statute, and not a voluntary statement at the scene of the accident or outside, which the witness or officer may have learned of, the court is of the opinion that the same is inadmissible under section 169.09, subdivision 13, having reference also to the amendment of 1947. The objection is sustained, and you may have an exception to the ruling of the Court."

Plaintiff thereupon made the following offer of proof:

"Plaintiff offers to prove by the testimony of Norman Sollie, State Highway Patrolman, that between 7:30 and 8:00 o'clock in the emergency room of the St. Olaf Hospital, in the presence of Sheriff Albert Reinartz, Dr. B. J. Cronwell, Dr. P. A. Lommen, and Nurse Haney, in response to a question asked by Patrolman Sollie, the defendant, Reuben Pierce, made the following statements; that he had been driving south and that he dimmed his lights but from there on up to the point of impact or collision, he didn't know just what happened.

"Mr. Plunkett: The defendant objects to the offer of proof on the ground that the testimony is excluded by statute, section 169.09, Subdivision 13.

"The Court: The court will sustain the objection to the offer of proof, and plaintiff may have an exception to the ruling. Now you may proceed."

Officer Sollie then testified that he again called on defendant the following morning and again had a conversation with him. Sheriff Reinartz and Wallace Sieh, county attorney, were then present. Sollie's testimony regarding what took place at that time is as follows:

"Q. Mr. Sollie, on the following day, Monday, May 22nd, did you have a conversation with Mr. Reuben Pierce?

"A. I did.

"Q. And where was that conversation?

"A. It was in one of the wards at the hospital.

"Q. And was anyone present at the time?

"A. Yes, Sheriff Reinartz, County Attorney Sieh, and myself.

"Q. And prior to talking to him was Mr. Pierce advised that any statements that he made were voluntary?

"A. Yes.

"Q. Will you testify as to whether or not he was advised that any statements he might make might be used against him?

"A. He was.

"The Court: You better show who made such statements to him.

"Q. I am getting to that. And did you question Mr. Pierce at that time?

"A. I did.

"Q. And was he advised as to his constitutional right of self-incrimination and so forth?

"A. He was.

\* \* \* \* \*

"Q. Did you advise him any statement he made was voluntary?

"A. Yes.

"Q. And that it might be used against him?

"A.  Yes.

"The Court:  Was such statement taken down, do you know?

"Mr. Kelley:  I believe it was, your Honor.

"The Court:  With all these statements and foundation being laid in it?

"Mr. Kelley:  I am sorry, I didn't understand.

"The Court: I say with this foundation laid in it?

"Witness:  I don't believe the statement does.

"The Court:  What was the purpose of it?

"Mr. Kelley: I believe Officer Sollie could best testify to that.

"Q.  What was your purpose of your conversation with Mr. Pierce at that time?

"A.  We wanted to establish his whereabouts the evening before the accident and also his version of what happened at the accident.

*  *  *  *  *

"Q.  At that time in question were you talking to Mr. Pierce in order to make out an investigation report on this accident?

"A.  I was.

"Q.  At that time what did Mr. Pierce say?

"Mr. Plunkett:  The defendant would like the privilege of asking a few questions for the purpose of laying a foundation for objection.

"The Court:  You may do so.

"Examination by Mr. Plunkett:

"Q.  Mr. Sollie, at the time in question here, you were acting in your official capacity as a highway patrolman, is that true?

"A.  I was.

"Q.  And you intended to and did question Mr. Pierce in that capacity?

"A.  Yes.

"Q.  For the purpose of making your report to the State Highway Department?

"A.  Yes, for the purpose of the report, and purposes beyond the report.

"Q. Well, any other purpose that it could be legally used, isn't that true?

"A. That's right.

"Q. But your principal interest was to get as complete a report as you could from him, so that you could put it in the report to the Highway Department?

"A. That's right.

"Q. And that was your duty, is that true?

"A. Yes.

"Q. And at that time, did you inform Mr. Pierce that he was required to answer these questions for the purpose of that report?

"A. I am quite certain that Mr. Pierce wasn't told that he was required to answer.

"Q. You say you are quite certain he wasn't told?

"A. He was not.

"Q. It is customary for you to so inform persons that are involved in an accident where you are taking a statement from them, that they are required to give that information for the purpose of the report that you have to make to the State Highway Department?

"A. As I recall, I believe that Mr. Pierce was so informed in the emergency room, but the following afternoon, I am also definite that he wasn't told that it was necessary that he give this information.

"Q. You assumed that he understood that from what you told him the day before?

"A. He was told that anything he would tell us would have to be told voluntarily.

"Q. Who told him that?

"A. The County Attorney, Sieh.

"Q. Now, was that statement taken down in writing?

"A. Which portion of the statement do you mean?

"Q. The statement which you say was made on May 22nd at St. Olaf Hospital.

"The Court: Come up here a minute, now.

"Mr. Plunkett: We object to any further testimony in the questioning of this witness.

"The Court: The Court will rule that it is not admissible, so that is clear, on the grounds that it amounts to using the law enforcement and county attorney's office for the purpose of eliciting evidence in the civil trial, and the defendant has not been brought to trial yet, and the objection is sustained to all of it, and the Court will grant an exception. He is here, subject to cross examination under the statute. He could be called."

Plaintiff thereupon made the following offer of proof:

"Plaintiff at this time makes an offer of proof that the witness, Highway Patrolman Sollie, would testify that on the morning of May 22nd, in the presence of County Attorney Wallace Sieh and Sheriff Albert Reinartz, and in one of the ward rooms of the St. Olaf Hospital, after being advised that any statements he gave were voluntary on his part, and after being advised of his constitutional right against self-incrimination, and after being further advised that this statement could be used against him, defendant did state that he couldn't tell us what had happened after he had dimmed his headlights until the moment of collision, and defendant Pierce further stated that he might have fallen asleep but then later on contradicted himself on his possibility of having fallen asleep. These statements were taken down in writing by the county attorney, and signed and initialed by the defendant, in the presence of all parties above mentioned. Plaintiff hereby offers this statement as written in evidence.

"Mr. Plunkett: Same objection, your Honor, and on the further ground that they are excluded by section 169.09, Subdivision 13.

"The Court: What other objection?

"Mr. Plunkett: And on the ground that the information obtained was in connection with an investigation carried on by the sheriff, county attorney, and Officer Sollie, in connection with any possible criminal prosecution which might take place as to the parties involved in this accident.

"The Court: Sustained, and an exception in each case is granted as to the Court's ruling."

The appeal raises for our determination the following questions:

(1) Was it error to exclude the testimony of Officer Sollie and plaintiff's offer to prove by him certain admissions made by defendant as to his actions immediately prior to the collision?

(2) Was it error for the court to instruct the jury to disregard all mention of the county attorney's participation in the investigation of the accident?

(3) Was it error to exclude the entire testimony of the witness Van Epps previously given at a coroner's inquest?

At the outset, it might be mentioned that defendant contends that the evidence is so conclusive in his favor that a verdict in favor of plaintiff could not stand, even if the evidence excluded had been admitted. With this we do not agree. The outcome of the case hinges almost entirely on whether we are to believe plaintiff and her corroborating witness or defendant and his corroborating witness. The physical facts are not so convincing either way that they can conclusively overcome the testimony of the witnesses. Under these circumstances, the evidence excluded might well have been the deciding factor; and, if improperly excluded, there should be a new trial.

The testimony of Officer Sollie was excluded on the theory that it was privileged under M. S. A. 169.09, subd. 13, which reads:

"All required accident reports and supplemental reports shall be without prejudice to the individual so reporting and shall be for the confidential use of the department for accident prevention purposes, except that the department and any law enforcement department of any municipality or county in this state shall, upon written request of any person involved in an accident or upon written request of the representative of his estate, disclose to such person, the representative of his estate, or legal counsel, the names and addresses of the driver and all other persons involved in an accident, the name and address of any witnesses to the accident, the name and

address of any officer who has investigated the accident, the license of any motor vehicle involved therein, and the date and place of the accident. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon the demand of any person who has, or claims to have, made such a report, or, upon demand of any court, a certificate showing that a specified accident report has or has not been made to the department solely to prove a compliance or a failure to comply with the requirements that such report be made to the department. Disclosing any information contained in any accident report, except as provided herein, is unlawful and a misdemeanor.

"Nothing herein shall be construed to prevent any person who has made a report pursuant to this chapter from testifying in any trial, civil or criminal, arising out of an accident, as to facts within his knowledge. It is intended by this subdivision to render privileged the reports required but it is not intended to prohibit proof of the facts to which such reports relate. Legally qualified newspaper publications shall upon request to a law enforcement agency be given an oral statement covering only the time and place of the accident, the names and addresses of the parties involved, and a general statement as to how the accident happened without attempting to fix liability upon anyone, but said legally qualified newspaper publications shall not be given access to the hereinbefore mentioned confidential reports, nor shall any such statements or information so orally given be used as evidence in any court proceeding, but shall merely be used for the purpose of a proper publication of the news."

In Garey v. Michelsen, 227 Minn. 468, 35 N. W. (2d) 750, we had occasion to construe § 169.09, subd. 13, and the effect of L. 1947, c. 114, upon the privilege created by the statute as it had existed prior to the amendment. As we there pointed out, prior to the 1947 amendment we had held in Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, and Hickok v. Margolis, 221 Minn. 480, 22 N. W. (2d) 850, that if, to refresh his memory, reference was made by a police officer to a memorandum made at the time of the accident

report, the information he thus obtained was inadmissible under the statute as it then existed. After pointing out the changes effected by the 1947 amendment, we said in the Garey case (227 Minn. 475, 35 N. W. [2d] 755):

"In view of the changes made by L. 1947, c. 114, however, it seems clear that the legislature intended testimony of this kind to be admissible. Even though the officer may have used his notebook to refresh his memory, he was nonetheless testifying to facts within his knowledge, and his testimony with reference thereto was properly admissible under the amended statute. All that is rendered privileged thereby is the report itself or information gained directly therefrom. Here, the report was not used, either directly or indirectly, to gain knowledge of the facts concerning which the officer testified. Rather, such facts were within his personal knowledge, and his testimony with reference thereto was properly admissible."

See, also, Rom v. Calhoun, 227 Minn. 143, 34 N. W. (2d) 359.

Defendant contends that our decision in the Garey case is wrong as a matter of law and that under the facts of that case it was not necessary to decide the issue now before us. He further contends that it is not necessary to decide whether the offered evidence is admissible in the case now before us. Whether the decision in the Garey case was dicta, as defendant contends, we need not determine. It is clear to us that the issue is now squarely before us in this case.

That the admission of defendant would be admissible in the absence of any statute cannot well be denied. Binewicz v. Haglin, 103 Minn. 297, 115 N. W. 271, 15 L.R.A.(N.S.) 1096, 14 Ann. Cas. 225; Litman v. Peper, 214 Minn. 127, 7 N. W. (2d) 334. It must follow that the evidence is inadmissible only to the extent that the statute makes it so.

The question now before us has been before courts of other states having statutes quite similar to ours. In Ritter v. Nieman, 329 Ill. App. 163, 67 N. E. (2d) 417, the admissibility of the testimony of a sheriff that defendant had admitted at the scene of the accident that he had failed to stop before entering the highway was involved.

The Illinois statute seemingly has for its purpose the same object as ours. Ill. Rev. Stat. 1945, c. 95½, § 141, reads as follows:

"All required accident reports and supplemental reports shall be without prejudice to the individual so reporting and shall be for the confidential use of the department except that the department may disclose the identity of a person involved in an accident when such identity is not otherwise known or when such person denies his presence at such accident. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon demand of any person who has, or claims to have made such a report, or upon demand of any court, a certificate showing that a specified accident report has or has not been made to the department solely to prove a compliance or a failure to comply with the requirement that such a report be made to the department."

With respect to the admissibility of the testimony involved, the Illinois court said (329 Ill. App. 169, 67 N. E. [2d] 421):

"* * * Here there was no such report offered in evidence. The statute specifically enjoins the use of the report in a civil or criminal trial. For this court to hold that a party making such report could not testify to 'admission against interest' made by a party to an accident, would extend the language of the statute to include prohibition not contained therein."

In Heiman v. Kolle, 317 Mich. 548, 552, 27 N. W. (2d) 92, 93, defendant assigned as error the admission of testimony of a police officer relating to statements made to him by defendant, contending that it was inadmissible under the Michigan statute, 1 Comp. Laws 1929, § 4722, subsection (e), as amended by Act No. 318, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4722, Stat. Ann. 1946 Cum. Supp. § 9.1590), which reads:

"The driver of every motor vehicle involved in an accident resulting in a vehicle or vehicles becoming so disabled as to be incapable of being propelled in the usual manner, or resulting in personal injury or death of any person shall forthwith report such accident

to the nearest or most convenient police station or police officer. The officer receiving such report shall forthwith forward the same to the commissioner of State police on forms to be prescribed by him. Such report shall not be available for use in any court action, but it shall be for the purpose of furnishing statistical information as to the number and cause of accidents."

With respect to the admissibility of the testimony to which objection was made, the court said (317 Mich. 552, 27 N. W. [2d] 94):

"The above officer was attached to the accident prevention bureau of the police department of the city of Detroit. He testified in substance that defendant stated to him that he (defendant) did not stop at Second street, but only shifted to second gear and continued in motion when the lights turned green before he reached Second street.

"There was no attempt to introduce his report in evidence. His testimony as to what defendant told him does not contravene the purpose of the above act."

See, also, Baumgarten v. Tasco, 312 Mich. 161, 20 N. W. (2d) 144.

In Stroud v. Hansen, 48 Cal. App. (2d) 556, 560, 120 P. (2d) 102, 104, the California court said:

"* * * No evidence of the facts that occurred at the time of a vehicular accident is privileged. Only those reports are confidential which are so made by section 488 of the Vehicle Code. To make a statement privileged and inadmissible it must come within the express terms of the section."

See, also, Carpenter v. Gibson, 80 Cal. App. (2d) 269, 181 P. (2d) 953.

There are other cases pointing to the opposite view. See, Henry v. Condit, 152 Or. 348, 53 P. (2d) 722, 103 A. L. R. 131; Bachelder v. Woodside, 233 Iowa 967, 9 N. W. (2d) 464; McBride v. Stewart, 227 Iowa 1273, 290 N. W. 700.

None of the statutes which we have examined are as specific as our § 169.09, subd. 13, which provides:

"Nothing herein shall be construed to prevent any person who has made a report pursuant to this chapter from testifying in any trial, civil or criminal, arising out of an accident, as to facts within his knowledge. It is intended by this subdivision to render privileged the reports required but *it is not intended to prohibit proof of the facts to which such reports relate."* (Italics supplied.)

Obviously, this provision became part of our law by the 1947 amendment in order to overcome the result of our decisions in Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455, and Hickok v. Margolis, 221 Minn. 480, 22 N. W. (2d) 850, *supra.*

What an officer hears is as much a fact within his knowledge as what he observes. In investigating an accident, he is not required to close his ears and use only his powers of observation. No attempt was made to use the report in this case. Having reëxamined the question passed upon in Garey v. Michelsen, 227 Minn. 468, 35 N. W. (2d) 750, *supra,* we adhere to that decision. It was error to exclude the testimony of Officer Sollie; consequently there must be a new trial.

■ While it appears that the objection of defendant to the offered testimony was based primarily on § 169.09, subd. 13, the trial court may have relied also on § 595.02(5) in excluding the evidence. That question is not argued in the briefs; but, inasmuch as there must be a new trial, it might be well to point out that we are of the opinion that the above section does not apply. Section 595.02(5) reads:

"A public officer shall not be allowed to disclose communications made to him in official confidence when the public interest would suffer by the disclosure."

The statute is not applicable, because there is no showing that the evidence offered was a communication made to a public officer in official confidence, nor is there any showing that the public interest would suffer by the disclosure. Both conditions must be present before the evidence becomes inadmissible. Here there were

several persons present. Under these circumstances, the admission could hardly be said to have been made in official confidence.

Nor is § 602.01 applicable. That section reads:

"Any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent in the trial of any action for damages for injuries sustained by such person or for the death of such person as the result of such injuries. No statement can be used as evidence in any court unless the party so obtaining the statement shall give to such injured person a copy thereof within 30 days after the same was made."

This statutory provision could have no application to the oral testimony of the officer. The statement of defendant was not taken by an adverse party, nor does the statute render the statement wholly inadmissible. Lestico v. Kuehner, 204 Minn. 125, 283 N. W. 122; Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534.

■ In the cross-examination of defendant as to statements he had made in the presence of the highway officer and others, the following transpired:

"Q. On Monday, May 22nd, do you remember having a conversation in your hospital room with the county attorney, Mr. Sieh, Officer Sollie, and Sheriff Reinartz?

"A. Well, I remember some people being up there but I don't remember who it was for sure, I couldn't say that.

\* \* \* \* \*

"The Court: What is the theory of bringing the County Attorney in? Why don't you talk about if the highway patrol came in?

"Q. I asked him that, your Honor, if the highway patrolman was there.

"The Court: You better limit it to that alone; I think the court has already indicated; the other may be stricken now, proceed."

Thereafter followed further questions. Afterward the court made this statement:

"The Court: The jury will disregard any mention made of the County Attorney in connection with the trial of this lawsuit. It is absolutely out, and you are to disregard it. All right."

In its instructions to the jury the court again stated:

"* * * I have likewise cautioned you that in connection with * * * the mention of a county attorney being present, or anything like that must be entirely disregarded by you in the consideration of the evidence in this case."

Plaintiff contends that these statements were prejudicial. We fail to see why it was necessary to caution the jury that it must disregard all mention of the county attorney. No attempt was made to call the county attorney as a witness. His mere presence would neither make the statements of defendant privileged nor would it in itself be improper. There was no showing that the statements were made to the county attorney in confidence, nor do we see how the public interest would suffer if the jury knew he was present when the statements were made. See, Cole v. Andrews, 74 Minn. 93, 76 N. W. 962.

One of the witnesses called on behalf of defendant was John Van Epps, Jr., who was traveling from Brainerd on the night of the collision. He testified that when he drove south from Blooming Prairie he noticed the car ahead of him and that he continued to follow it at a distance of two and one-half or three blocks until the collision. It turned out to be the Pierce car. He thereafter testified to what he observed, and his testimony furnishes the main or only corroboration of defendant's testimony. Van Epps had previously testified at a coroner's inquest. On cross-examination, he was asked whether he had said anything about following the Pierce car when he testified at the coroner's inquest. He replied that he did not remember. Thereafter, plaintiff offered to lay a foundation, by means of the court reporter who attended the coroner's inquest, for the introduction of the entire testimony of Van Epps at the coroner's inquest. There was no showing that the witness was asked at the inquest whether he was following the Pierce

car. Ordinarily, a witness may be impeached by showing that he failed to assert a fact when it would have been natural for him to assert it. Failure so to assert a fact when it would have been natural to assert it may be used to contradict his assertion of the existence of the fact. Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824. In a proper case, the entire testimony at a former trial or hearing may be used to show failure to assert a fact which ought to have been asserted, or that the witness has altered or added to his testimony in some material respects. Bennett v. Syndicate Ins. Co. 43 Minn. 45, 44 N. W. 794. In this case, there is no showing that the witness did more than answer questions put to him at the coroner's inquest. The transcript of his testimony is not before us. It would hardly be expected that he would volunteer the information unless he were questioned about it. Under these circumstances, we cannot say that it was error to exclude the offered transcript.

Reversed and new trial granted.

[1]Reported in 51 N. W. (2d) 651.