GROCERS WHOLESALE COOPERATIVE, INC., Appellee,

v.

NUSSBERGER TRUCKING COMPANY, Inc., et al., Appellants.

No. 54733.

Supreme Court of Iowa.

Dec. 15, 1971.

Cosson, Christianson, Hohnbaum & George, Des Moines, Brown, Dresser & Kinsey and David E. Funkhouser, Mason City, for appellants.

Dickinson, Throckmorton, Parker, Mannheimer & Raife and Dwight W. James, Des Moines, for appellee.

UHLENHOPP, Justice.

This appeal involves problems relating to admissibility of evidence and answers to special interrogatories, in an action growing out of a collision of two trucks.

Plaintiff owned the cargo in a truck headed north on the early morning of February 24, 1969, on United States Highway 69 in Wright County, Iowa. Defendant Nussberger owned a truck, operated by defendant Patovisti and leased for the trip to defendant Pre-Fab, headed south at the same time and place. For brevity we will refer to the vehicles as "plaintiff's truck" and "defendants' truck". Defendants' truck came across the line into the left lane and did not return to the right lane. The trucks collided. In the present action, plaintiff seeks to recover for damage to its cargo and for expense of cleanup. The driver of plaintiff's truck was killed. A claim for his death is the subject of another action.

Before the present trial, the discovery deposition of Patovisti was taken in the action relating to the death of plaintiff's driver. In that deposition Patovisti testified as to how the collision occurred, what he told a "state trooper" at the scene, and other matters concerning the collision. As to how the collision occurred, Patovisti testified in the deposition that immediately north of the place of collision he came upon a "black vehicle" which caused him to turn left into the other lane of traffic.

At the outset of the present trial, plaintiff called Patovisti as a witness. Patovisti did not testify the same as in his deposition. Instead, he testified that he did not swerve immediately before impact with plaintiff's truck and that he was in his own lane of traffic. By way of impeachment, plaintiff's attorney thereupon asked Patovisti if he testified on a prior occasion—but the question was interrupted by the request of defendants' attorney to take up a matter in the absence of the jury. With the jury absent, defendants' attorney objected that plaintiff's attorney was about to go into Patovisti's deposition in the other case. After argument by counsel, the trial court overruled the objection. When the jury was recalled, Patovisti testified that on a previous occasion he had stated under oath it was his claim there was a truck immediately north of the place where the accident occurred, parked at the west shoulder of the road, and this truck caused him to turn to the left and into the other lane of traffic. He remembered saying after the accident, "What happened, what happened?" He testified that he occasionally nodded his head when driving and that he told someone he might have dozed off.

Thereafter, plaintiff introduced additional evidence that the collision occurred on plaintiff's side of the highway and that Patovisti did not see plaintiff's truck before he hit it—although it was there to be seen. After plaintiff rested its case, defendants introduced evidence that their truck did indeed suddenly veer left into the pathway of plaintiff's truck but that a blowout caused by a metal bolt was later discovered to have occurred in their left front tire. The blowout tire was not very satisfactorily traced to defendants' truck by the evidence.

The trial court submitted for the jury's consideration three charges of negligence against Patovisti: failure to keep a proper lookout, failure to have control, and fail-

ure to yield half of the traveled way by turning to the right. The trial court also submitted the question of sudden emergency in connection with defendants' contention that a blowout occurred in their tire.

The jury returned a verdict for plaintiff. In answer to special interrogatories, the jury found that Patovisti violated his duty to keep a proper lookout but that he did not violate his duty to have control or to yield half of the traveled way by turning to the right. Defendants appealed the case to this court.

Defendants make two contentions here: first, the trial court erroneously allowed plaintiff's attorney to question Patovisti about the previous deposition testimony, and second, the trial court erroneously submitted to the jury the charge of failure of Patovisti to keep a proper lookout.

I. Defendants contend that Patovisti could not be questioned about his testimony in the discovery deposition for two reasons: (a) the deposition was taken in another action and (b) the deposition testimony was privileged.

(a) In connection with the first reason, defendants rely on the following italicized portion of our rule on the use of depositions: "Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial or at an interlocutory hearing or upon the hearing of a motion *in the same action* against any party who appeared when it was taken, or stipulated therefor, or had due notice thereof [in four specified situations, including impeachment]." Rule 144, Rules of Civil Procedure (italics added). Defendants contend that the discovery deposition was not taken "in the same action", but rather, in the death action.

Defendants are mistaken about the nature of rule 144. That rule is not an exclusionary rule of evidence. It is a permissive rule, setting out situations in which depositions are to be admitted into evi-

dence. But the rule nowhere provides that depositions cannot be used in situations in which they would be admissible under other rules of evidence.

■ Prior inconsistent statements of a witness are admissible to impeach him, whether written or oral. Thus, a witness' prior inconsistent statements made in a deposition are admissible. 58 Am.Jur. Witnesses § 771 at 421–22, § 774 at 425; 98 C.J.S. Witnesses § 585 at p. 561, § 594(g) at pp. 579–581. And such statements are admissible even though the deposition was taken in another case. Kelso v. Independent Tank Co., 348 P.2d 855 (Okl.); Valley Land Office, Inc. v. O'Grady, 72 Wash. 2d 247, 432 P.2d 850.

Reason (a) of defendants is not tenable.

(b) Defendants' second reason is that the impeaching testimony was privileged under §§ 321.266 and 321.271, Code, 1971.

The former section requires both the driver in a collision like this one and the officer who investigates the collision to report the collision to the Iowa Department of Public Safety.

The latter section was changed in 1967. 62 G.A. ch. 276. The change is significant in view of prior decisions of this court. Section 321.271 provided at the time of this collision in 1969:

All accident reports *filed by a driver* of a vehicle involved in an accident as required under section 321.266 shall be in writing. *The report* shall be without prejudice to the individual so reporting and shall be for the confidential use of the department, except that upon the request of any person involved in the accident, his insurance company or its agent, or the attorney for such person, the department shall disclose the identity and address of the person involved in the accident. *The written report* filed with the department shall not be admissible in or used in evidence in any civil or criminal case arising out of the facts on which the report is based.

All written reports *filed by a law enforcement officer* as required under section 321.266 shall be made available to any party to an accident, his insurance company or its agent, or his attorney on written request to the department of public safety and the payment of a fee of one dollar for each copy. (Italics added.)

Prior to 1967, however, the section read thus:

*All* accident reports shall be in writing and the written report shall be without prejudice to the individual so reporting and shall be for the confidential use of the department, except that upon the request of any person involved in an accident, or the attorney for such person, the department shall disclose the identity of the person involved in the accident and his address. *A written report filed with the department* shall not be admissible in or used in evidence in any civil case arising out of the facts on which the report is based. (Italics added.)

The section in its prior form, as we last quoted, dealt with *all* accident reports, that is, reports of drivers and of investigating officers. It made a *written report* inadmissible in evidence. Under the statute in that form, this court held, of course, that both the driver's and the officer's report were inadmissible. The court also held that statements by a driver to an investigating officer for the officer's use in making his report were likewise inadmissible. Meyer v. Schumacher, 160 N.W.2d 433 (Iowa). The extension of inadmissibility to such statements was held necessary in order to make the inadmissibility of the officer's report effective.

But the section in its form since 1967, which we first quoted, differentiates drivers' reports and investigating officers' reports. Drivers' reports are the subject of the first paragraph of the section, and that paragraph makes those written reports inadmissible. Investigating officers' reports are the subject of the second paragraph. That paragraph contains no provision on inadmissibility or confidentiality.

The legislature must have intended to change the law on this subject or it would not have thus rewritten the section. Giving effect to the plain language of the section as it has stood since 1967, we hold that the provision on inadmissibility applies only as to drivers and then only as to the written reports which are made to the department. Thus the section itself no longer makes the reports of investigating officers inadmissible. Nor does the section render inadmissible statements made by drivers to investigating officers to enable the officers to make their reports.

We have no problem as to retrospectivity here. The events in this case occurred after the change in the statute. Assuming the doubtful premise that Patovisti's testimony elicited in the presence of the jury related to statements he made to an investigating officer for the officer's report, such statements are not privileged under the amended statute. For decisions under statutes having somewhat similar provisions, see Rockwood v. Pierce, 235 Minn. 519, 51 N.W.2d 670; Brown & Root, Inc. v. Haddad, 142 Tex. 624, 180 S.W.2d 339.

Defendants' reason (b) is not well taken.

II. As to defendants' contention regarding submission of the specification on lookout, again two points are involved. Defendants argue (a) that lookout could not have been a proximate cause of the collision and (b) that the jury's answers to interrogatories are inconsistent with the verdict for plaintiff.

(a) The gist of defendants' first point is that the cause of the collision was Patovisti's failure to yield half of the traveled way by turning to the right, not his failure to keep a lookout. This point is largely factual.

Patovisti's failure to yield by turning to the right was the immediate cause of the collision, but why did he fail to yield

by turning right? Defendants contend that this was because of the blowout, not because of failure to maintain a lookout. But here defendants are encroaching upon the province of the jury. Evidence was introduced as to failure to keep a proper lookout and also as to the blowout. Neither issue was established as a matter of law. At the conclusion of the evidence, the trial court had before it these two contested issues, among others. The jury could find that Patovisti did not yield by turning right because he was not watching properly or because the tire blew out. The trial court had to submit those issues to the jury, and did so. As to the presence of a vehicle on the left side and the issue of lookout, see Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632 (Iowa).

Defendants' point (a) is not meritorious.

(b) Defendants' second point—the alleged inconsistency of the general verdict with the jury's special findings—is more difficult. While granting plaintiff a verdict, the jury found that plaintiff had established its charge of negligence as to improper lookout but had not established its charges of negligence as to lack of control and failure to yield half of the traveled way by turning right. Defendants think the findings are so irreconcilable with the verdict that the trial court was required to send the jury back for further deliberation or order a new trial. The trial court thought otherwise, saying, "Under all the record in this case, the court finds no inconsistency in the answers made to said interrogatories."

We think the provision defendants must rely on is this sentence in rule 206, R.C.P.: "If the answers [to special interrogatories] are consistent with each other, but any is inconsistent with the general verdict, the court may order judgment appropriate to the answers notwithstanding the verdict, or a new trial, or send the jury back for further deliberation." The essential question is whether the verdict for plaintiff here is inconsistent with the jury's answer that plaintiff did not establish Patovisti was

negligent in failing to yield half of the traveled way by turning right.

We were faced with a somewhat similar problem in Berghammer v. Smith, 185 N.W.2d 226, 234 (Iowa). After stating the rule regarding irreconcilable conflicts, we said:

However, all reasonable presumptions are in favor of the general verdict.
. . .

Since we must indulge every presumption in favor of the general verdict, we examine the evidence in its view most favorable to plaintiffs to see if it will sustain a finding of liability on the sole ground defendant failed to keep a proper lookout.

See also State v. Propps, 190 N.W.2d 408 (Iowa).

■ Will the evidence here sustain a verdict for plaintiff on lookout although the jury found that plaintiff did not establish negligence in failing to yield half of the traveled way by turning right? We are inclined to think so, although the question is close.

■ Patovisti was on the left side and did not turn right; no question exists about that. From that, defendants assume the jury accepted their evidence about blowout and emergency. But that assumption is not necessarily well taken. The jury may have rejected the blowout evidence and yet have found that plaintiff had not established its negligence charge based on failure to yield half of the traveled way by turning right. Failure so to yield, in itself, is prima facie evidence of negligence, not negligence per se. Bachelder v. Woodside, 233 Iowa 967, 9 N.W.2d 464. The collision occurred in a rural area at a point at which Patovisti was not required to travel on the right except when he was meeting vehicles or persons on horseback or when he was overtaken and passed by a vehicle. Code, 1971, §§ 321.298, 321.299; Despain v. Ballard, 218 Iowa 863, 256 N.W. 426. The jury could

find that Patovisti came upon a black vehicle and turned to the left around it, not observing plaintiff's oncoming truck as he ought to have done. Thus the jury may have concluded that Patovisti's essential negligence was failure timely to observe plaintiff's truck, and may have placed its verdict upon that basis.

Although we are not altogether free from doubt about this assigned error, in view of the rule that "all reasonable presumptions are in favor of the general verdict" and of our duty to examine the evidence "in its most favorable view" to the verdict, we are unwilling to hold the trial court erred in ruling an irreconcilable conflict did not exist.

Defendants' point (b) cannot be sustained.

Affirmed.

All Justices concur.